Filed 9/18/15

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION EIGHT

| | |
|---|---|
| THE PEOPLE OF THE STATE OF CALIFORNIA,<br><br>      Petitioner,<br><br>      v.<br><br>SUPERIOR COURT OF THE STATE OF CALIFORNIA FOR THE COUNTY OF LOS ANGELES,<br><br>      Respondent;<br><br>EDWARD TROYER,<br><br>      Real Party in Interest. | B263146<br><br>(Los Angeles County<br> Super. Ct. No. ZM018442) |

ORIGINAL PROCEEDINGS in mandate.  James Bianco, Judge.  Petition granted and remanded.

Jackie Lacey, Los Angeles County District Attorney, Roberta Schwartz and Matthew Brown, Deputy District Attorneys, for Petitioner.

No appearance for Respondent.

Ronald L. Brown, Los Angeles County Public Defender, Albert J. Menaster, Steve McManus and Jack T. Weedin, Deputy Public Defenders, for Real Party in Interest.

_____

Under the Sexually Violent Predator Act (SVPA or the Act; Welf. & Inst. Code, § 6600 et seq.),[1] a convicted sex offender may be declared a sexually violent predator (SVP) and civilly committed upon completion of the criminal sentence. A petition to commit someone under the Act may be filed in the superior court only if two mental health evaluators agree that the person in question is an SVP and is likely to engage in acts of sexual violence without appropriate treatment and custody. (§ 6601, subds. (d)-(i).)

After a commitment petition is filed, the superior court holds a hearing to determine if there is "probable cause to believe that the individual . . . is likely to engage in sexually violent predatory criminal behavior upon his or her release." (§ 6602, subd. (a).) If the court finds probable cause, the court orders a trial to determine whether the person is an SVP. (*Ibid.*)

In *People v. Superior Court* (*Ghilotti*) (2002) 27 Cal.4th 888 (*Ghilotti*), the Supreme Court held that, although not expressly authorized by statute, the superior court may review an evaluator's report before the probable cause hearing to determine whether, "on its face," it contains "material legal error." (*Id.* at pp. 894-895, 909-915.) The court emphasized, however, that the scope of this review is quite limited – "the superior court's review of evaluators' reports to determine the validity of an SVPA commitment or recommitment petition is limited to whether a report is infected with material *legal error*; neither the person potentially subject to commitment nor the petitioning authority is entitled at this stage to an evidentiary hearing on the *accuracy* of the evaluations." (*Id.* at p. 911, fn. 8.) At this stage of the proceeding, "[i]f such legal error *does not appear* on the *face* of the report, the court must accept the report as valid." (*Id.* at p. 914, fn. 10.)

In this case, the trial court granted Edward Troyer's motion – filed before the probable cause hearing – to dismiss a petition seeking to recommit him for an additional term under the SVPA. The trial court did so after concluding that the two evaluations supporting the petition contained "material legal error" because substantial portions of

---

[1]     Undesignated statutory references are to the Welfare and Institutions Code.

the evaluation reports appeared to have been copied from reports prepared by previous evaluators and that, as a result, the opinions contained in the evaluations were not those of its authors.

The People filed a writ petition challenging the trial court's ruling. We agree that the alleged deficiencies in the evaluations do not constitute "material legal error" under *Ghilotti*. Accordingly, we grant the People's writ petition and remand the matter to the trial court for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

1.    *Troyer's Predicate Convictions*

In 1975, real party in interest Edward Troyer was convicted of three counts of committing a lewd act on three different children under the age of 14 (Pen. Code, § 288). In 1985, he was again convicted of committing a lewd act on a child under the age of 14. Between 1960 and 1998, Troyer was convicted of numerous other crimes and he has been in prison or in a state hospital under an SVP commitment since 1998.[2]

2.    *The Prior SVP Commitment*

The District Attorney for the County of Los Angeles (D.A.) first filed a commitment petition against Troyer in 2003. For reasons that are unknown and are irrelevant to this writ proceeding, the trial did not take place until 2009, at which time Troyer was committed pursuant to a jury verdict. Although the SVPA at the time provided for an indefinite commitment, Troyer was committed to a two-year term pursuant to the law in effect when the commitment petition was filed.

---

[2]    Some of the other crimes of which Troyer was convicted were sexual in nature (such as indecent exposure), but others included battery, assault with a deadly weapon and driving under the influence.

3

*3.*     *The Recommitment Petition*

In October 2011, one month before Troyer's two-year commitment was set to expire, the former Department of Mental Health (DMH) sent a letter to the D.A., recommending that a petition to recommit Troyer as an SVP be filed.[3]  Accompanying the letter were two evaluations prepared earlier that month.

One evaluation was by Dr. Robin Thomas-Riddle, a licensed psychologist. According to Dr. Thomas-Riddle's evaluation, Troyer declined to be interviewed.  The 25-page report contained extensive information about Troyer's criminal history – especially with respect to the SVP predicate convictions , as well as other aspects of his personal history, such as relationship history, psychosocial history and substance abuse history.  The report also discussed Troyer's treatment progress, and included an assessment of Troyer's current mental status.

Dr. Thomas-Riddle diagnosed Troyer as suffering from pedophilia, alcohol dependence and antisocial personality disorder.  She concluded her report by stating that Troyer "is likely to commit sexually violent, predatory, criminal behavior as a result of his diagnosed mental disorders if he were to be released to the community" and that he "meets the criteria as a sexually violent predator as described in Section 6600(a) . . . ."

The second evaluation was prepared by Dr. Richard Starrett, also a licensed psychologist.  In contrast to Dr. Thomas-Riddle, Dr. Starrett stated in his report that he had interviewed Troyer.  Dr. Starrett's 44-page report covered the same general subjects as Dr. Thomas-Riddle's report, and concluded with a statement that Troyer is "an individual falling at the high range of risk" and he "meets the criteria as a sexually violent predator as described in Section 6600(a) . . . ."

In December 2011, the D.A. filed a recommitment petition.

---

[3]     In 2012, the Department of State Hospitals (DSH) was created and assumed the duties of the former DMH.  (See http://www.dsh.ca.gov/AboutUs/default.asp [as of Sept. 18, 2015]; *Reilly v. Superior Court* (2013) 57 Cal.4th 641, 647 (*Reilly*).)

*4.     Troyer Questions the Supporting Evaluations*

For the next approximately two years, the probable cause hearing was continued repeatedly.

In 2013, the Los Angeles County Public Defender (P.D.), as Troyer's counsel, subpoenaed documents from the former DMH and from Coalinga State Hospital, seeking evidence that Drs. Starrett and Thomas-Riddle were "designated" to perform Troyer's SVP evaluations. The dismissal motion asserts that neither of the subpoenaed entities could find evidence the doctors were "designated" to perform the evaluations.

The DSH then ordered new evaluations from different evaluators. In September 2013, two new evaluations were prepared. One concluded that Troyer qualified for commitment as an SVP, while the other concluded he did not.[4]

After these split evaluations, two additional evaluations were prepared in November 2013. Both evaluators concluded Troyer did not meet the criteria for SVP commitment.

In January 2014, the DSH sent a letter to the D.A. with the four evaluations prepared after those of Drs. Starrett and Thomas-Riddle. Although the former DMH had already made a recommitment recommendation to the D.A., and such a petition had been filed in December 2011 and was pending a hearing, the letter from DSH stated that "this case is not being forwarded to you for a commitment petition."

*5.     Troyer's Dismissal Motion*

In January 2015, Troyer filed a motion to dismiss the recommitment petition. Troyer raised two arguments. First, he sought dismissal on the ground that there was no evidence Drs. Starrett and Thomas-Riddle were "designated" by the former DMH to

---

[4]     The evaluator who concluded Troyer did not qualify as an SVP acknowledged it was "a very close case" and "a reasonable argument can be made for either conclusion." He believed that Troyer "continues to demonstrate a high degree of negativity and anti-sociality which suggest that he is not a 'normal' 72 year old person." The evaluator apparently believed the balance tipped against finding Troyer to be an SVP because of his advanced age and significant health problems, and because "[h]is last sexual violent crime carried out against a child occurred over 25 years ago."

5

perform the evaluations.  Because the trial court did not rule on this contention, we focus on the second of the two arguments Troyer raised in his dismissal motion.

Troyer's second contention was that the two evaluations supporting the recommitment petition contained "material legal error" because the evaluations "were in large part, especially in regard to their opinions and conclusions, taken from the reports of prior evaluators, and from each other.  Thus, they do not represent their independent judgments, but the reconstituted judgments of prior evaluators."[5]

In support of the second contention, Troyer presented numerous side-by-side comparisons of excerpts from the two evaluators' reports and those of prior evaluators. These comparisons reflected that the reports of both Drs. Starrett and Thomas-Riddle contained many passages that were identical to passages that could be found in reports prepared by mental health professionals who had previously evaluated Troyer.  In some cases, the two evaluators purported to quote from the prior evaluations and provided attribution, but in some cases they did not.  Much of the copying appeared in sections describing Troyer's personal, medical and criminal history.  However, some of the opinions and conclusions of Drs. Starrett and Thomas-Riddle contained identical language to language that can be found in prior reports.

The People filed a written opposition.  They argued that the dismissal motion was essentially a summary judgment motion and that such motions are not applicable to SVP proceedings.  Although the People maintained that Troyer's contentions should be raised at the probable cause hearing or at trial, they did not directly address the copying contention on the merits.

---

[5]     In his dismissal motion, Troyer characterized what the doctors had done as "plagiarism."  The trial court and the People adopted this term as a shorthand way to refer to Troyer's contention.  It cannot be determined on the face of the reports that the doctors appropriated the ideas of others without forming their own independent judgment, so we will describe what the doctors did as copying words from previous reports.

*6.        The Hearing and the Trial Court's Ruling*

Troyer's counsel called two witnesses to testify at the hearing on the dismissal motion, both employees of DSH.  Because their testimony focused solely on the "designation" issue and related matters, we do not summarize the testimony here.

After the witnesses testified, the court and counsel discussed the two issues raised in the motion.  With respect to the copying issue, the court asked "[i]sn't that essentially the sort of error that was contemplated in *Ghilotti*?"[6]  The D.A. responded in the negative, noting that one would not know if the evaluations were valid until the evaluators were examined at a probable cause hearing concerning the bases for their opinions.

Troyer's counsel offered three substantially similar reasons why the copying amounted to material legal error.  All were based on the premise that the evaluations in question did not contain the evaluators' actual opinions but only the opinions of prior evaluators.

Specifically, Troyer argued the evaluations (1) violated a requirement "implicit in the SVP statutes" that the evaluator offer his or her "own personal opinion," (2) violated the "standardized assessment protocol" developed by DSH pursuant to a statutory mandate (§ 6601, subd. (c)), which provides that "the evaluation process and the ultimate opinions or conclusions [of the evaluator] are a matter of the exercise of independent, professional judgment," and (3) amounted to "essentially . . . fraudulent reports."

After hearing from counsel, the court found the evaluations were not independent as is required under the SVPA, concluded the copying amounted to material legal error, and granted the motion to dismiss the petition.

---

**6**        As discussed more fully below, the Supreme Court in *Ghilotti*, *supra*, 27 Cal.4th 888, held that, although not expressly authorized by statute, the superior court may review an evaluator's report before the probable cause hearing to determine whether, "on its face," it contains "material legal error." (*Id*. at pp. 894-895, 909-915.)  At this stage of the proceeding, neither party is entitled to an evidentiary hearing (*id.* at p. 911, fn. 8), and "[t]he professional determinations of an evaluator, insofar as based on consideration and application of correct legal standards, is conclusive" (*id.* at p. 913).

The court also determined the purported legal error was material because the two most recent evaluations prepared after those of Drs. Starrett and Thomas-Riddle were both negative.

Because the trial court ruled the recommitment petition should be dismissed based on the copying argument, it expressly declined to decide whether the petition should be dismissed based on Troyer's contention that the evaluators had not been properly "designated."

The court agreed to temporarily stay its order so the People could seek relief from this court.

7.      *The People's Writ Petition*

Shortly before the trial court's temporary stay was set to expire, the People filed a petition for a writ of mandate to challenge the ruling. They argue the trial court erred in concluding the copying amounted to "material legal error" that can support dismissal of the petition at this preliminary stage of the SVPA proceeding. They also ask this court to reject Troyer's designation argument or to remand the matter to the trial court so it may consider the contention.

We issued a temporary stay and, after receiving an informal response and reply, we issued an alternative writ. In the alternative writ, we advised the parties that, because the trial court expressly declined to decide the question, we did not intend to consider the merits of Troyer's contention that the recommitment petition should be dismissed because Drs. Starrett and Thomas-Riddle had not been "designated."

After issuing the alternative writ, we received formal briefing from the parties and heard oral argument.

**DISCUSSION**

1.      *Propriety of Writ Review*

The People acknowledge in their writ petition that the trial court's order is appealable. As they point out, however, the Supreme Court has determined that the People may challenge such an order by writ petition: "Dismissal of a petition for

8

involuntary civil commitment is an appealable final judgment (Code Civ. Proc., § 904.1, subd. (a)(1); *People v. Superior Court* (*Johannes*) (1999) 70 Cal.App.4th 558, 561, fn. 5 [SVPA]; *People v. Superior Court* (*Myers*) (1996) 50 Cal.App.4th 826, 834 [Mentally Disordered Offender Law]), but the People may alternatively seek writ review, and a stay, when the appellate remedy is inadequate (Code Civ. Proc., § 1086) because the dismissal will result in the release of one potentially dangerous to the public." (*Ghilotti*, *supra*, 27 Cal.4th at p. 900, fn. 4, original brackets.)

2.      *The SVPA and the Ghilotti Decision*

      a.      *The statutory framework*

The SVPA (§ 6600 et seq.) defines an SVP as "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).)

Under the SVPA, a convicted sex offender may be declared to be an SVP and civilly committed after completing the criminal sentence. (*Reilly, supra,* 57 Cal.4th at p. 646.) The procedure for having someone committed under the Act begins before that person completes serving his or her sentence. First, the Department of Corrections and Rehabilitation conducts an internal screening which is followed, if warranted, by a referral to the DSH for a full evaluation. (*Id.* at pp. 646-647; see also § 6601, subds. (a)-(d).)

The DSH evaluates the person "in accordance with a standardized assessment protocol" developed by the DSH. (§ 6601, subd. (c).) The evaluation is performed by two practicing mental health care professionals (psychiatrists or psychologists) "designated" by the DSH. (§ 6601, subd. (d).) If both evaluators agree the person "has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody," the Director forwards a request to the county's designated counsel (a district attorney or county counsel) that a petition for commitment be filed. (§ 6601, subds. (d) & (i); *Reilly*, *supra*, 57 Cal.4th at p. 647.)

9

If the evaluators disagree whether the person qualifies as an SVP, the Director must arrange for further examination by two independent professionals. (§ 6601, subd. (e); *Reilly*, *supra*, 57 Cal.4th at p. 647.) At this stage, a commitment petition may be filed only if both independent professionals agree that the person meets the criteria for commitment. (§ 6601, subd. (f); *Reilly*, at p. 647.)

Thus, "a petition for commitment or recommitment may not be filed unless two evaluators, appointed under the procedures specified in section 6601, subdivisions (d) and (e), have concurred that the person currently meets the criteria for commitment under the SVPA." (*Ghilotti, supra*, 27 Cal.4th at p. 909.)

After the commitment petition is filed, the superior court holds a probable cause hearing at which the subject of the petition is entitled to counsel, to "determine whether there is probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release." (§ 6602, subd. (a).) If no probable cause is found, the petition is dismissed. (*Ibid.*) If the court finds probable cause, the court orders a trial to determine whether the person is an SVP. (*Ibid.*)

"Though civil in nature, this trial contains a number of procedural safeguards commonly associated with criminal trials, including the alleged SVP's right to a jury trial (§ 6603, subd. (a)), to assistance of counsel (*ibid.*), and to a unanimous jury finding that he or she is an SVP beyond a reasonable doubt before he or she may be committed (§ 6604)." (*Reilly*, *supra*, 57 Cal.4th at p. 648.)

If the trial results in a determination that the person is an SVP, that person is committed "to the custody of the State Department of State Hospitals for appropriate treatment and confinement in a secure facility designated by the Director of State Hospitals." (§ 6604.) Since 2006, such commitment is for "an indeterminate term."[7]

---

[7] Before 2006, the commitment was for a two-year term, which could be extended pursuant to a petition for extended commitment (also known as a recommitment petition). After the 2006 amendment, a stipulation was signed by representatives of the D.A., the

(*Ibid.*; Stats. 2006, ch. 337, § 55, eff. Sept. 20, 2006; *People v. Castillo*, *supra*, 49 Cal.4th at pp. 148-149.)

Persons committed under the SVPA are to be treated at Coalinga State Hospital, "unless there are unique circumstances that would preclude the placement of a person at that facility." (§ 6600.05, subd. (a).)

The SVPA also provides that, during the pendency of the commitment proceeding, the attorney seeking commitment may ask the DSH to prepare updated evaluations (if "necessary in order to properly present the case for commitment") or replacement evaluations ("[i]f one or more of the original evaluators is no longer available to testify for the petitioner in court proceedings"). (§ 6603, subd. (c)(1).) If an updated or replacement evaluation results in a split of opinion as to whether the individual meets the criteria for commitment, the DSH must obtain two additional evaluations. (§ 6603, subd. (c)(1).) "However, although initial evaluations conducted under section 6601 must agree, a lack of concurrence between updated or replacement evaluations does not require dismissal of the petition. [Citation.] Rather, the updated evaluations' primary purpose is evidentiary or informational. [Citation.] Mandatory dismissal is not required where one or both of the later evaluators conclude the individual does not meet the criteria for commitment." (*Reilly, supra*, 57 Cal.4th at p. 648; see also *id.* at p. 655, fn. 2.)

b.      Ghilotti: *Limited preliminary review for "material legal error"*

As the Supreme Court observed in *Ghilotti*, *supra*, 27 Cal.4th at page 910, "[t]he SVPA contains no express provision for judicial review of reports of designated evaluators to determine whether they are infected with legal error." In *Ghilotti*, the court

P.D. and the Los Angeles County Superior Court. The stipulation was later modified by a Memorandum of Understanding signed by the same representatives. Among other things, it was agreed that, due to uncertainty regarding retroactive application of the change from two-year to indefinite commitments, the D.A. would continue to seek two-year commitments for those persons whose commitment petition was filed before the legislative change went into effect. In *People v. Castillo* (2010) 49 Cal.4th 145, the Supreme Court held this stipulation was enforceable.

11

went on to hold that, notwithstanding the absence of express authority, the authority to conduct such review "is inherent in the statutory scheme, and in the nature of the judicial power." (*Ibid.*)

In granting Troyer's motion to dismiss the recommitment petition, the trial court relied on this holding in *Ghilotti*. It is therefore important to understand the nature and limits of the Supreme Court's holding in that case.

Mr. Ghilotti was serving a second two-year commitment as an SVP. (See *ante*, p. 11, fn. 7.) While the question of recommitment for another two-year term was being considered, Ghilotti refused to agree to the terms of a release under the former DMH's conditional release program, which would have involved outpatient treatment and supervision. Two psychologists designated by the Director of the former DMH to evaluate Ghilotti for a possible recommitment petition prepared evaluations in which they concluded that Ghilotti did not meet the criteria for SVP commitment. (See *Ghilotti*, *supra*, 27 Cal.4th at pp. 895-896 & fn. 2.)

Notwithstanding the evaluators' reports, the Director of the former DMH forwarded a recommitment request to the district attorney, opining that Ghilotti still suffers from a mental disorder which makes him likely to engage in sexually violent criminal behavior as defined in the SVPA. The Director's request and opinion were supported by declarations from, among others, the Medical Director at Atascadero State Hospital and a staff psychiatrist at the same hospital, both of whom opined that, in the absence of supervised outpatient treatment, Ghilotti remained a high risk to reoffend. (*Ghilotti*, *supra*, 27 Cal.4th at pp. 896-898 & fn. 2.)

In the request to the district attorney, the Director questioned the validity of the designated evaluators' conclusions. (*Ghilotti*, *supra*, 27 Cal.4th at p. 898.) As the Supreme Court explained: "According to the Director, the evaluators' reports agreed that supervision and treatment are important to reduce Ghilotti's risk of reoffense. In the Director's view, the reports actually disclosed a likelihood that Ghilotti will reoffend if released without such conditions." (*Id.* at p. 893; see also *id.* at p. 898.)

After the district attorney filed a recommitment petition, Ghilotti filed a response in which he challenged the validity of the recommitment petition on the ground that it was filed without the concurrence of two mental health evaluators as required. The district attorney filed a reply, arguing that under subdivision (h) of section 6601, the Director may request a commitment or recommitment petition if, regardless of the opinions of the designated evaluators, the Director determines, on adequate evidence, that the person is an SVP.[8] (*Ghilotti*, *supra*, 27 Cal.4th at p. 898.)

Although the trial court expressed concerns that the two evaluations might be "legally 'incompetent,' in that they had misapplied the statutory criteria," the court ultimately dismissed the petition because it read the SVPA as prohibiting the filing of a commitment petition without the concurrence of two designated mental health evaluators. (*Ghilotti*, *supra*, 27 Cal.4th at pp. 899-900.)

After the Court of Appeal summarily denied the People's writ petition, the Supreme Court granted review. The only issue raised in the petition for review was whether subdivision (h) of section 6601 allows the filing of a commitment or recommitment petition without the concurrence of two designated mental health evaluators. However, after granting review, the Supreme Court asked the parties to brief additional issues, including the following: "if section 6601 allows the filing of a commitment or recommitment petition only with the concurrence of designated evaluators, when, if ever, should the trial court examine evaluators' reports for material legal error, and what steps should be taken if such error is found?" (*Ghilotti*, *supra*, 27 Cal.4th at p. 901.)

With respect to the question raised in the petition for review, the Supreme Court held that "a petition for commitment or recommitment may not be filed unless

---

[8]  Subdivision (h) of section 6601 provides in relevant part: "If the State Department of State Hospitals determines that the person is a sexually violent predator as defined in this article, the Director of State Hospitals shall forward a request for a petition to be filed for commitment under this article to the county designated in subdivision (i)."

two evaluators, appointed under the procedures specified in section 6601, subdivisions (d) and (e), have concurred that the person currently meets the criteria for commitment under the SVPA." (*Ghilotti, supra*, 27 Cal.4th at p. 909.)

Notwithstanding the statement that a commitment petition "may not be filed" without two positive evaluator reports, the court went on to hold that a petition could still be filed pursuant to the Director's request, subject to judicial review for material legal error in the evaluations. (See *Ghilotti*, *supra*, 27 Cal.4th at pp. 912-913.)

The court observed that section 6601 "does not allow the evaluators utter free rein. Instead, it imposes certain specific standards on their assessments. They must examine the person 'in accordance with a standardized assessment protocol' that considers 'diagnosable mental disorders, as well as various factors,' including 'criminal and psychosexual history, type, degree, and duration of sexual deviance, and severity of mental disorder,' which factors are 'known to be associated with the risk of reoffense among sex offenders.' (§ 6601, subd. (c).) On this basis, the evaluators are to answer a crucial question, i.e., whether 'the person has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence *without appropriate treatment and custody*.' (*Id*., subd. (d), italics added.) The evaluators' *professional* judgment is therefore to be exercised within a specified *legal* framework, and their legally accurate understanding of the statutory criteria is crucial to the Act's proper operation." (*Ghilotti*, *supra*, 27 Cal.4th at pp. 909-910.)

The court then observed that the evaluators in the case may have misunderstood the statutory criteria "and thus committed *legal error*, when reaching conclusions that Ghilotti does not qualify for recommitment under the SVPA." (*Ghilotti*, *supra*, 27 Cal.4th at p. 910.)

The court proceeded to hold that "a court entertaining a petition for an involuntary civil commitment has authority to review for legal error the expert evaluations which are a prerequisite to the filing of such a petition." (*Ghilotti*, *supra*, 27 Cal.4th at p. 910.)

While the Supreme Court held courts have such authority, the court emphasized the narrow scope of such authority: "The recommendation of an evaluator is subject to

14

judicial review for such material legal error at the behest of the appropriate party. If, upon review, the court finds no material legal error *on the face of the report*, the court shall deem the evaluator's recommendation valid, and shall dispose of the petition accordingly." (*Ghilotti*, *supra*, 27 Cal.4th at p. 895, italics added.)

In addition, the court explained: "the superior court's review of evaluators' reports to determine the validity of an SVPA commitment or recommitment petition is limited to whether a report is infected with material *legal error*; neither the person potentially subject to commitment nor the petitioning authority is entitled at this stage to an evidentiary hearing on the *accuracy* of the evaluations." (*Ghilotti*, *supra*, 27 Cal.4th at p. 911, fn. 8.)

Later, the court "stress[ed] that such judicial review is limited to whether one or more evaluators' reports are infected by material legal error. An evaluator's report is infected with legal error if, *on its face*, it reflects an inaccurate understanding of the statutory criteria governing the evaluation. [¶] On the other hand, judicial review of an evaluator's report does not extend to matters of debatable professional judgment within an evaluator's expertise. The professional determinations of an evaluator, insofar as based on consideration and application of correct legal standards, is *conclusive at the initial screening stage* set forth in section 6601." (*Ghilotti*, *supra*, 27 Cal.4th at p. 913, italics added; see also *id.* at p. 914, fn. 10 ["We have indicated that in *future* cases, where the issue is properly presented, the trial court should review a designated evaluator's report to determine whether, *on its face*, the report *is* infected with material legal error. If such legal error *does not appear* on the *face* of the report, the court must accept the report as valid"].)

Finally, the court explained how to determine if legal error is material: "An evaluator's legal error shall be deemed material if, and only if, (1) there appears a reasonable probability, sufficient to undermine confidence in the outcome, that the error affected the evaluator's ultimate conclusion, and (2) a change in the evaluator's conclusion would either supply, or dissolve, the necessary concurrence of two designated evaluators." (*Ghilotti*, *supra*, 27 Cal.4th. at p. 913.)

15

Although *Ghilotti* involved a case in which the People took issue with the evaluators' conclusions, *Ghilotti* makes clear that the challenge for material legal error may also be made by the person who is the subject of the SVP commitment petition. (See *Ghilotti*, *supra*, 27 Cal.4th at p. 913; see also *id.* at p. 895.)

Because the trial court in the case had dismissed the petition without considering whether the supporting declarations were infected with material legal error, the Supreme Court concluded the matter should be remanded to that court "with directions (1) to review the reports of the designated evaluators for material legal error, and (2) thereafter to proceed under the principles expressed in this opinion." (*Ghilotti*, *supra*, 27 Cal.4th at p. 915.)

As for the remedy when a court concludes than an evaluation is infected with material legal error, the court stated: "If the court finds material legal error in an evaluator's report, the court shall provide the evaluator opportunity promptly either to correct the report or to prepare a new report, so as to set forth the conclusions the evaluator reaches under correct legal principles." (*Ghilotti*, *supra*, 27 Cal.4th at pp. 913-914.)

We now consider whether the trial court's ruling is proper under the standard established in *Ghilotti*.

3.    *Analysis*

a.    *The standard of review*

The parties disagree on the applicable standard of review. The People argue that the petition raises a question of law, which is reviewed de novo. (*People v. Superior Court* (*George*) (2008) 164 Cal.App.4th 183, 192.)

Troyer, on the other hand, maintains that "the issues involve questions of fact which are subject to a[n] abuse of discretion standard of review." Troyer claims the trial court "made factual determinations that the two evaluations in question contained numerous errors which were material and that they were legal in nature."

We agree with Troyer that the trial court made factual determinations. However, as we discuss below, this is precisely why its order must be reversed. *Ghilotti* authorizes

16

a trial court to conduct a preliminary review of a commitment petition for "material *legal* error." By definition, whether something constitutes legal error is a question of law, especially where the error must appear "on the face" of the document in question. Indeed, the Supreme Court in *Ghilotti* characterized the issue as purely legal. (See *Ghilotti, supra*, 27 Cal.4th at p. 901 & fn. 5 [explaining that, after review was granted, the court directed the parties to address, among other things, "when, if ever, should the trial court examine evaluators' reports for material legal error" and noting that this, and other issues on which additional briefing was sought, "were pure questions of law" which could be considered by the court, even if they were not raised in the courts below].)[9]

b.      *Troyer's procedural contentions lack merit*

Troyer raises two arguments why we should deny the petition without reaching the merits.

First, Troyer claims the People waived their right to challenge the trial court's ruling because, in their written opposition to the dismissal motion and at the trial court hearing, they did not dispute that the evaluators' copying from previous reports constituted material legal error.

We disagree. The People argued at the hearing that the copying did not constitute material legal error under *Ghilotti*. The parties and the trial court spent considerable time arguing and discussing whether the copying of text from previous reports constituted material legal error under *Ghilotti* and the trial court decided, on the merits, that it did. Finally, even assuming arguendo there was a waiver, the issue is a purely legal one, which we have discretion to consider. (See *Bialo v. Western Mutual Ins. Co*. (2002) 95

---

[9]      As will be evident from the discussion below, we are not deciding whether the evaluators' reports were reliable, valid or accurate. These questions are inherently factual. We are deciding only whether, as a question of law, their reliability, validity or accuracy, could be determined in the context of a motion to dismiss at this preliminary stage of the SVPA proceeding, where neither party is entitled to an evidentiary hearing.

17

Cal.App.4th 68, 73 ["Generally, issues raised for the first time on appeal which were not litigated in the trial court are waived. [Citations.] However, where, as here, the issue is purely legal and presented to us on undisputed facts, and involves a matter of public interest, we retain discretion to decide it"]; *Ghilotti*, *supra*, 27 Cal.4th at p. 901 & fn. 5 [because issue was purely legal, question when court may examine evaluators' reports for material legal error would be considered by Supreme Court, even though issue was not raised in the courts below].)

Second, Troyer argues the petition was not timely filed because the People waited more than one year from the time the DSH advised the D.A. that the evaluations prepared after those of Drs. Starrett and Thomas-Riddle did not support the filing of a recommitment petition. However, the People are not challenging any determination by the DSH. They are challenging the trial court's order dismissing the recommitment petition and they filed their petition less than 60 days after the trial court issued its order. Troyer does not allege he was prejudiced because the petition was not filed sooner. (See *People v. Superior Court* (*Brent*) (1992) 2 Cal.App.4th 675, 682 ["Where there is otherwise no statutory authority or time limit in filing a writ, it must usually be filed within 60 days"]; *People v. Superior Court* (*Clements*) (1988) 200 Cal.App.3d 491, 496 ["Where as here there is no statutory time in which a petition must be filed, the approach of the Supreme Court to the timeliness of a petition has been one of laches. 'Laches requires an unreasonable delay in filing the petition plus prejudice to real party.' "].) In addition, because the petition was filed before the 60-day deadline to appeal (Cal. Rules of Court, rule 8.308(a)), the People did not run afoul of the rule that, with certain exceptions, "a party is not entitled to obtain review of an appealable judgment or order by means of a petition for an extraordinary writ where he or she failed to timely file an appeal from the ruling." (*Mauro B. v. Superior Court* (1991) 230 Cal.App.3d 949, 952.)

18

c.  *The trial court erred in ruling that the alleged deficiencies in the evaluators' reports constituted material legal error under* Ghilotti

The People claim the copying from previous reports was not legal error under *Ghilotti*. We agree.

Troyer's argument was based on the premise that an evaluator must provide an independent opinion, and the evaluations were infected with material legal error because the extensive copying of text from previous reports established that the opinions of the evaluators were not their own.

The issue in this case is not whether evaluators may rely solely on the opinions of others in concluding that someone should be committed as an SVP. The issue is whether one can conclude, *from the face of the evaluations and without the benefit of an evidentiary hearing*, that the opinions of Drs. Starrett and Thomas-Riddle were not their own.

In this case, however, it is not possible to determine, based *solely* on a comparison of the evaluations of Drs. Starrett and Thomas-Riddle with those of prior evaluators, that the opinions offered by Drs. Starrett and Thomas-Riddle were not their own opinions. At best, the comparison can serve as a basis to question the validity or authenticity of the doctors' opinions. It cannot serve as a basis to conclude, as a matter of law, that the opinions are invalid or were not those of the doctors. As the People succinctly put it in their traverse: "The . . . issue is nothing more than a cross-examination point related to the quality of [the doctors'] opinions, not a material legal error."[10] Indeed, even the trial court impliedly recognized that it could not *conclusively* determine the evaluations in

---

[10] Troyer claims an evidentiary hearing was not required because the People admitted "to the copying of reports" by Drs. Starrett and Thomas-Riddle. However, the issue is not whether there was copying. The issue is whether one can conclude, based solely on the copying, that the opinions offered by Drs. Starrett and Thomas-Riddle were not their own.

19

question were not those of the authors, stating only that they "don't *appear* to have been independent evaluations."

Although the trial court recognized that, under *Ghilotti*, the legal error must appear on the face of the evaluations, and although Troyer never took issue with the requirement, Troyer suggests in his return to the petition that the Supreme Court has essentially done away with the requirement the legal error be shown on the face of the reports. Specifically, he claims that in *Reilly*, *supra*, 57 Cal.4th 641, "the Supreme Court merely required a finding of 'materiality' as a prerequisite for obtaining relief without any requirement of demonstrating legal error on the face of the reports."

This is not a correct reading of *Reilly*. In that case, it was *undisputed* that the two original evaluations supporting the commitment petition were based on an a DSH standardized assessment protocol which was determined to be invalid because it was not adopted pursuant to the procedural requirements of the Administrative Procedure Act (APA; Gov. Code, § 11340 et seq.). After numerous trial court proceedings, the Court of Appeal granted a petition for writ of mandate by the subject of the commitment proceeding and dismissed the petition. It did so because subsequent evaluations, prepared by the same evaluators, concluded the subject of the commitment petition no longer met the criteria for commitment. (*Reilly*, s*upra*, 57 Cal.4th at p. 651.)

The Supreme Court reversed. The court explained: "*The People do not contest the finding that the original assessment protocol used here amounted to an invalid regulation and that its use constituted error*. Instead, they challenge the Court of Appeal's conclusion that an alleged SVP need not demonstrate the *materiality* of such error in order to obtain dismissal of his SVPA petition. We agree with the People . . . ." (*Reilly*, *supra*, 57 Cal.4th at p. 652, italics added.)

The court in *Reilly* did not do away with the requirement that the legal error appear on the face of the evaluation. The legal error was not disputed. The only issue in the case was materiality. Therefore, the fact the opinion contains numerous references to materiality without mentioning "legal error" does not mean the Supreme Court abandoned its holding in *Ghilotti* that the legal error appear on the face of the evaluations.

20

On the contrary, the court repeatedly cited and followed its holding in *Ghilotti*. (See, e.g., *Reilly*, *supra*, 57 Cal.4th at p. 654 ["*Ghilotti* also defines what our cases require in order to set aside an evaluator's error in employing an incorrect legal standard"].)

Finally, Troyer claims the evaluations of Drs. Starrett and Thomas-Riddle were properly rejected because they were "stale" and did not reflect whether Troyer "currently" suffers from a mental disorder as required under section 6600, subdivision (a)(3). This contention lacks merit. First, the trial court did not purport to reject the evaluations on the ground they were "stale" or did not reflect Troyer's current mental state. Second, Troyer's argument is premised on the assumption that the opinions contained in the reports of Drs. Starrett and Thomas-Riddle were not their own, but were in fact those of health care professionals who had evaluated Troyer years earlier. As discussed above, however, there is no basis to conclude, at this stage of the proceeding, that the opinions in the reports of Drs. Starrett and Thomas-Riddle were not their own.

At subsequent proceedings, it may be discovered that the evaluations cannot support Troyer's commitment. Nothing in this opinion should be construed as a reflection of this court's opinion on the issue.

## DISPOSITION

The petition is granted. The matter is remanded to the trial court, which is directed to vacate its February 9, 2015 order granting the motion of real party in interest to dismiss the recommitment petition, and to thereafter conduct any additional proceedings which are warranted in conformance with this opinion.


GRIMES, J.

WE CONCUR:

BIGELOW, P. J.



RUBIN, J.


21