[No. D044976. Fourth Dist., Div. One. Apr. 19, 2005.]

In re ROBERT EDWARD WRIGHT on Habeas Corpus.

**COUNSEL**

Gideon Margolis, under appointment by the Court of Appeal, for Petitioner.

Bill Lockyer, Attorney General, Robert R. Anderson, Chief Assistant Attorney General, Gary W. Schons, Assistant Attorney General, and Marilyn L. George, Deputy Attorney General, for Respondent the People.

No appearance for Respondent Superior Court.

**OPINION**

**McINTYRE, J.**—A jury concluded that Robert Edward Wright was a sexually violent predator (SVP) within the meaning of the Sexually Violent Predators Act (the Act, Welf. & Inst. Code, § 6600 et seq.; all undesignated statutory references are to this code), and the court committed him to a state mental institution for a two-year term. As a procedural prerequisite to the commencement of this proceeding, the Director of the State Department of Mental Health (Director) was required to designate "two practicing psychiatrists or psychologists, or one practicing psychiatrist and one practicing psychologist," to evaluate Wright. (§ 6601, subd. (d).) Because these evaluators did not agree on whether Wright was an SVP, the Director was required to arrange an examination by two "independent professionals" (§ 6601, subd. (e)), which are defined as including "licensed psychologists who have a doctoral degree in psychology." (§ 6601, subd. (g).)

In this case, we conclude that the language of section 6601 unambiguously requires that licensed psychologists conducting a secondary evaluation under subdivision (g) have "a doctoral degree in psychology." We also examine what it means to have "a doctoral degree in psychology" within the meaning of the Act and, assuming a secondary evaluator did not have the

required degree, what effect this deficiency has on Wright's commitment. Based on the procedural status of this case, we conclude that the assumed error was harmless and deny the petition.

## FACTUAL AND PROCEDURAL BACKGROUND

Wright was convicted of committing a lewd act upon a child and sentenced to prison. After his release, he was charged and pleaded guilty to two similar counts. Before the end of Wright's prison term, the Director evaluated him under a standardized assessment protocol to determine whether, as the result of a diagnosed mental disorder, he was likely to commit new acts of criminal sexual violence unless confined and treated. (§ 6601, subds. (b) & (c).) Drs. Craig A. Updegrove and Susan L. Ferrant evaluated Wright and disagreed whether he met the SVP criteria. (§ 6601, subd. (d).) Dr. Updegrove opined that Wright did not meet the SVP criteria and Dr. Ferrant concluded that he did meet the criteria. Because the initial evaluators disagreed, the Director was required to "arrange for further examination of the person by two independent professionals selected in accordance with subdivision (g)." (§ 6601, subd. (e).)

Drs. Charles W. Jackson and Hy Malinek subsequently evaluated Wright and both concluded that he met the SVP criteria. (§ 6601, subds. (f) & (g).) Thereafter, the Director sent a letter to the Imperial County District Attorney's Office recommending the initiation of civil commitment proceedings against Wright (§ 6601, subd. (h)) and the district attorney filed a petition alleging that Wright was an SVP (§ 6601, subd. (i)). The petition incorrectly stated that Drs. Updegrove and Jackson recommended that Wright be committed.

The trial court conducted a probable cause hearing, where it considered the testimony of Dr. Malinek and Dr. Raymond Murphy (Wright's expert witness), and admitted into evidence the reports written by Drs. Malinek and Ferrant. It also admitted into evidence "certified copies of mental health evaluations"; presumably, these were the reports prepared by Drs. Updegrove and Jackson. The trial court subsequently found probable cause that Wright was an SVP.

The matter proceeded to trial, where Drs. Jackson, Malinek and Ferrant testified that Wright met the SVP criteria and Dr. Updegrove testified that he

did not meet these criteria. These individuals testified regarding their educational backgrounds, with Drs. Malinek and Ferrant both stating that they held a doctorate degree in "clinical psychology." In contrast, Dr. Jackson testified that he had obtained a "Ph.D." A jury concluded that Wright met the SVP criteria and the trial court ordered him committed for a two-year period to Atascadero State Hospital. Wright appealed and we rejected his challenge to the sufficiency of the evidence. (*People v. Wright* (Aug. 6, 2004, D041915) [nonpub. opn.].) At the request of both parties, we have taken judicial notice of the record in this prior appeal. (Evid. Code, § 452, subd. (d).)

After obtaining information suggesting that Dr. Jackson lacked the qualifications required by the Act, Wright filed the instant petition for habeas corpus, contending (1) he was deprived of his right to due process of law because the judgment committing him was based on legally insufficient evidence, and (2) his trial counsel provided ineffective assistance by failing to object to this evidence at trial. After finding good cause to do so, we filed an order to show cause why the relief requested should not be granted. The People were ordered to file a return to the petition, and Wright was ordered to file a traverse to the return.

Among other things, we specifically directed the parties to address (1) what the subdivision (g) of section 6601 requirement of having "a doctoral degree in psychology" meant given the various degrees that meet the requirements for licensing as a psychologist in California (see Bus. & Prof. Code, § 2914) and (2) whether the procedural posture of this case rendered the matter moot or any error harmless. We also asked the parties to stipulate as to Dr. Jackson's specific doctoral degree, but they were unable to do so.

## DISCUSSION

As a threshold matter, we reject the People's argument that the instant proceedings are moot because the district attorney filed a recommitment petition before the expiration of Wright's current commitment period, which ended March 18, 2005. A reviewing court has "inherent discretion" to resolve an issue of broad public interest that is likely to recur, even though an event occurring during the pendency of the case would normally render the matter moot. (*In re William M.* (1970) 3 Cal.3d 16, 23–25 [89 Cal.Rptr. 33, 473 P.2d 737].) The required qualifications for evaluators under the Act are a question of general interest that is likely to recur. Accordingly, mootness does not prevent the resolution of the substantial legal questions presented.

■ We begin our analysis with an overview of the applicable law. The Act allows for the involuntary civil commitment of individuals who, as a result of a diagnosed mental disorder, are likely to continue engaging in sexually violent criminal behavior even after serving a prison sentence. (*Hubbart v. Superior Court* (1999) 19 Cal.4th 1138, 1143–1144 [81 Cal.Rptr.2d 492, 969 P.2d 584].) As recognized by our high court, the Legislature envisioned a narrowing process when it drafted the Act by providing for both a preliminary probable cause hearing and a later trial. (*People v. Hurtado* (2002) 28 Cal.4th 1179, 1189 [124 Cal.Rptr.2d 186, 52 P.3d 116].) ■ As a procedural prerequisite to the filing of a petition commencing SPV proceedings, the Director is required to obtain concurring opinions of two evaluators that the individual has "a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody[.]" (§ 6601, subds. (d) & (f).) State employees that are either practicing psychiatrists or psychologists may conduct the initial evaluations. (§ 6601, subd. (d).) If these individuals disagree, the Director must appoint two "independent professionals" to perform a secondary evaluation on the individual using the same criteria. (§ 6601, subds. (e) & (f).)

■ The Act sets forth further requirements for these "independent professionals" including that they have at least five years of experience in the diagnosis and treatment of mental disorders, that they not be state government employees and that any licensed psychologists have a "doctoral degree in psychology." (§ 6601, subd. (g).) If the "independent professionals" agree that the individual meets the SVP criteria and the "Department of Mental Health determines that the person is a sexually violent predator as defined in this article," the Director shall request that the county's designated counsel file a commitment petition. (§ 6601, subd. (h).) Copies of the evaluation reports and other supporting documents must be made available to the county's designated counsel (§ 6601, subd. (h)) and a petition can only be filed if counsel agrees with the recommendation. (§ 6601, subd. (i).) The Act does not require that the evaluations be alleged or appended to a petition. (*People v. Superior Court (Preciado)* (2001) 87 Cal.App.4th 1122, 1128 [105 Cal.Rptr.2d 159].)

■ "The filing of the petition triggers a new round of proceedings under the Act." (*Hubbart v. Superior Court, supra,* 19 Cal.4th at p. 1146.) A superior court judge must then review the petition and determine "whether there is probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release." (§ 6602, subd. (a).) The individual is entitled to an attorney and, if no probable cause is found, the petition is dismissed. (*Ibid.*) However, if

the court finds probable cause, i.e., a reasonable suspicion, that the person is likely to engage in sexually violent predatory criminal behavior upon release, it must keep the person in custody and order a trial to determine whether the person is an SVP under section 6600. (§ 6602, subd. (a); *People v. Hurtado, supra*, 28 Cal.4th at p. 1189.)

■ At trial, the individual is entitled to counsel, access to all relevant medical and psychological records and reports, and has the right to retain experts to perform an examination on his or her behalf. (§ 6603, subd. (a).) Either party may demand a trial by jury (§ 6603, subds. (a) & (b)) and any jury must unanimously decide whether the requirements for classification as an SVP have been established "beyond a reasonable doubt." (§§ 6603, subd. (f), 6604.) If the state does not satisfy its burden of proof, the person is released from prison when his or her term expires. (§ 6604.)

Turning to the facts of this case, there is some confusion in the record as to whether Dr. Jackson performed an initial or a secondary evaluation. Although the petition suggests he performed the initial evaluation, the dates of the actual evaluation reports make clear that Dr. Jackson performed a secondary evaluation on Wright. Thus, he was required to meet the criteria set forth in section 6601, subdivision (g), including having a doctoral degree in "psychology," and we must determine the meaning of this requirement.

■ To become a licensed psychologist in California an applicant must, among other things, possess an earned doctorate degree in (1) psychology, (2) education psychology, or (3) education with the field of specialization in counseling psychology or educational psychology. (Bus. & Prof. Code, § 2914, subd. (b).) Alternatively, an individual may become licensed via reciprocity, if certain requirements are satisfied and the individual is licensed in another state. (Bus. & Prof. Code § 2946.) We presume that the Legislature knew about the various ways an individual could become a licensed psychologist in California and intended only those licensed psychologists with a doctoral degree in "psychology" to perform secondary evaluations under subdivision (g) of section 6601. (*People v. McGuire* (1993) 14 Cal.App.4th 687, 694 [18 Cal.Rptr.2d 12] [the Legislature is deemed to be aware of statutes in existence and to have enacted a statute in light thereof].) Thus, to qualify as a secondary evaluator, Dr. Jackson was required to have a doctoral degree in "psychology"; rather than a degree in "education psychology," or "education with the field of specialization in counseling psychology or educational psychology." (Bus. & Prof. Code, § 2914, subd. (b).)

Dr. Jackson testified at trial, without further elaboration, that he obtained a "Ph.D." from the University of South Carolina. After the briefing, but before the opinion issued in Wright's prior appeal, his appellate counsel obtained

information suggesting that Dr. Jackson lacked the qualifications required by the Act. Specifically, Dr. Jackson testified in connection with an unrelated case that he received a doctoral degree in "counseling psychology" and that he previously obtained a license to practice psychology in South Carolina. A certificate from the University of South Carolina shows that Dr. Jackson holds a doctorate degree in philosophy, with a major in education. Dr. Jackson's application for licensure in California shows that he obtained his California license via reciprocity. Because of these factual differences, we asked the parties to stipulate to Dr. Jackson's specific doctoral degree, but they were unable to do so.

Although it appears that Dr. Jackson does not have a doctoral degree in "psychology"; but rather has a Ph.D. in "education," this evidentiary issue is properly left to the trial court should this issue arise in the further proceedings against Wright. (*MHC Financing Limited Partnership Two v. City of Santee* (2005) 125 Cal.App.4th 1372, 1396 [23 Cal.Rptr.3d 622].) For purposes of analysis, we shall assume, without deciding, that Dr. Jackson does not have a doctoral degree in "psychology" and that he was not qualified to conduct secondary evaluations under subdivision (g) of section 6601. We now turn to the question of what effect this assumed error has on Wright's commitment and whether his counsel provided ineffective assistance by failing to discover this problem and failing to object to Dr. Jackson's trial testimony.

As we previously indicated in *Preciado*, the Act does not require that a petition allege the existence of two professional evaluations, nor are the People required to attach the evaluations to the petition or prove their existence at either the probable cause hearing or at trial. (*Preciado, supra,* 87 Cal.App.4th at p. 1130.) The evaluations are a prerequisite to the filing of the petition and the evaluations serve as a procedural safeguard to prevent meritless petitions from reaching trial. (*People v. Scott* (2002) 100 Cal.App.4th 1060, 1063 [123 Cal.Rptr.2d 253]; *Preciado, supra,* 87 Cal.App.4th at p. 1130.) The filing of the petition initiates a new round of proceedings and rather than demonstrating the existence of the two evaluations, the People are required to show "the more essential fact that the alleged SVP is a person likely to engage in sexually violent predatory criminal behavior. [Citation.]" (*Preciado, supra,* 87 Cal.App.4th at p. 1130.)

Nonetheless, the evaluations play an important role in the statutory scheme and appropriate relief may be obtained after bringing any defect in the evaluations to the trial court's attention. (*Preciado, supra,* 87 Cal.App.4th

at p. 1130.) For example, an individual could challenge the petition via a motion to dismiss at the time of the probable cause hearing and, assuming this motion is denied, seek review via a writ of habeas corpus. (*People v. Talhelm* (2000) 85 Cal.App.4th 400, 404–405 [102 Cal.Rptr.2d 150].) The question before us is whether Wright was deprived of due process in the instant situation where one of two evaluations supporting a petition was defective, but a trial court found probable cause to proceed to trial on the petition and the individual was committed after receiving a trial on the merits. In this situation, we conclude any defect with the evaluations was harmless.

Illegalities in pretrial commitment proceedings that are not "jurisdictional in the fundamental sense," are not reversible error per se on an appeal from the subsequent trial. Rather, the "defendant [must] show that he was deprived of a fair trial or otherwise suffered prejudice as a result of the error at the preliminary examination." (*People v. Pompa-Ortiz* (1980) 27 Cal.3d 519, 529 [165 Cal.Rptr. 851, 612 P.2d 941] (*Pompa-Ortiz*).) Lack of fundamental jurisdiction means an entire absence of power to hear or determine the case, such as a lack of jurisdiction over the subject matter or the parties. (*Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 288 [109 P.2d 942].) This type of fundamental jurisdictional error can be raised at any time, including for the first time on appeal. (*Pompa-Ortiz, supra*, 27 Cal.3d at p. 529.)

Irregularities in the preliminary hearing under the Act are not jurisdictional in the fundamental sense and are similarly subject to harmless error review. (*People v. Talhelm, supra*, 85 Cal.App.4th at p. 405.) Thus, reversal is not necessary unless the individual can show that he or she was denied a fair trial or had otherwise suffered prejudice. (*Ibid.*) Here, counsel represented Wright at trial and Wright presented his own expert witness and cross-examined the People's witnesses. These facts show that Wright received a fair trial and he does not argue to the contrary. The only possible prejudice Wright could have suffered was in the fact that the petition actually proceeded to trial; however, our high court concluded that the erroneous denial of a motion to dismiss an information under Penal Code section 995 will not be reversed on appeal in the absence of a showing that the defendant was deprived of a fair trial, or otherwise prejudiced in the ability to mount a defense. (*Pompa-Ortiz, supra*, 27 Cal.3d at pp. 529–530, citing additional authority.) "The same principle applies in other contexts involving allegedly improper rulings in criminal cases, even where it is claimed there had been a violation of constitutionally protected rights. [Citations.]" (*Waller v. TJD, Inc.*

(1993) 12 Cal.App.4th 830, 834 [16 Cal.Rptr.2d 38].) Thus, the fact that Wright was compelled to "participate in an otherwise fair trial" does not demonstrate prejudice. (*Ibid.*)

Wright also asserts that his trial counsel provided ineffective assistance by failing to discover the assumed error in Dr. Jackson's qualifications and moving to dismiss the petition or object to Dr. Jackson's trial testimony. To establish ineffective assistance of counsel, Wright must show, by a preponderance of the evidence, that his counsel's representation fell below the standard of a competent advocate and a reasonable probability exists that, but for counsel's errors, the result would have been different. (*People v. Ledesma* (1987) 43 Cal.3d 171, 216–218 [233 Cal.Rptr. 404, 729 P.2d 839].) A " 'reasonable probability' " is a probability sufficient to undermine confidence in the outcome. (*People v. Bolin* (1998) 18 Cal.4th 297, 333 [75 Cal.Rptr.2d 412, 956 P.2d 374].)

We reject the contention that Wright's counsel provided ineffective assistance by not discovering the assumed error because we are not convinced, on this record, that a reasonably competent attorney would have discovered the assumed defect in Dr. Jackson's qualifications. Dr. Jackson's resume indicated that he held a degree in "counseling, psychology" and he testified at deposition that he received a doctoral degree in "counseling psychology." Arguably, Dr. Jackson attempted to conceal the precise nature of his degree, as evidenced by the amount of sleuthing the People undertook to respond to our requested stipulation regarding Dr. Jackson's degree.

Finally, even assuming counsel's failure to move to dismiss the petition and object to Dr. Jackson's trial testimony was constitutionally deficient, the foregoing discussion reveals that Wright has not established prejudice sufficient to create a reasonable probability that a different result would have occurred in the absence of the claimed errors. Even if the trial court had dismissed the petition at the probable cause hearing, it could have allowed the People to file a new petition supported by the requisite evaluations. (See *People v. Superior Court* (*Butler*) (2000) 83 Cal.App.4th 951, 961–963 [100 Cal.Rptr.2d 199] [defective petition supported by only one evaluation could be cured by filing a new petition].) Additionally, the Act does not require that the People present the testimony of more than one expert at trial (*People v. Scott, supra,* 100 Cal.App.4th at p. 1064; *Preciado, supra,* 87 Cal.App.4th at p. 1130), or that experts possess particular credentials. In any event, Drs. Malinek and Ferrant also testified at trial and both recommended commitment. Hence, prejudice has not been established.

## DISPOSITION

The petition is denied.

McConnell, P. J., and Irion, J., concurred.

Petitioner's petition for review by the Supreme Court was denied July 13, 2005. George, C. J., did not participate therein.