Filed 2/10/17

CERTIFIED FOR PUBLICATION

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| CLAY JOSEPH JONES, | C079496 |
| Plaintiff and Appellant, | (Super. Ct. No. 34201300156846CUMCGDS) |
| v. | |
| ALAN R. WHISENAND, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Raymond M. Cadei, Judge. Affirmed in part, reversed in part, and remanded for further proceedings.

Clay Joseph Jones, in pro per., for Plaintiff and Appellant.

Hansen, Kohls, Sommer & Jacob and Jason J. Sommer, for Defendant and Respondent.

Representing himself, Clay Joseph Jones sued his former attorney, Alan R. Whisenand, for legal malpractice and civil rights violations allegedly committed in the course of civil commitment proceedings under the Sexually Violent Predator Act

1

(SVPA). (Welf. & Inst. Code, § 6600 et seq.)[1] The trial court sustained Whisenand's demurrer to the first amended complaint without leave to amend on the grounds that (1) Jones failed to allege actual innocence of all charges in the underlying criminal case or post-conviction exoneration, and (2) Jones failed to show that Whisenand was a "state actor" acting "under color of state law."

We conclude that the actual innocence requirement does not apply to SVPA proceedings. Because SVPA proceedings take place at the end of an offender's prison sentence, requiring an offender to plead and prove actual innocence would make recovery impossible in all but the most unusual cases. (See, e.g., *In re Smith* (2008) 42 Cal.4th 1251, 1270 [considering the constitutional claims of an offender who obtained postconviction relief after an SVP petition was filed].)[2] Although the SVPA imposes significant limitations on the rights of sexually violent predators (SVPs) and alleged SVPs, nothing in the statutory scheme suggests the Legislature intended to deprive all or even most such persons of the right to recover for legal malpractice. We therefore conclude that the actual innocence requirement does not apply.

However, public policy considerations underlying the actual innocence requirement—namely, judicial economy and the desire to avoid conflicting resolutions—compel the conclusion that alleged SVPs should not be able to pursue causes of action for legal malpractice in the course of their SVPA proceedings unless and until such proceedings have been terminated in their favor. As we shall explain, our conclusion does not leave alleged SVPs without a remedy while proceedings are ongoing, as they

---

[1] Undesignated statutory references are to the Welfare and Institutions Code.

[2] We requested supplemental briefing from the parties on this issue. In their supplemental letter briefs, the parties both acknowledged that offenders would be unable to meet the actual innocence requirement in all but the most unusual circumstances.

2

may still seek relief for ineffective assistance of counsel in the SVPA proceedings themselves.

Jones does not, and cannot, allege that the pending SVPA proceedings have been terminated in his favor. We therefore conclude the trial court properly sustained Whisenand's demurrer to Jones's cause of action for legal malpractice. The SVPA proceedings against Jones are, however, still pending, raising the possibility that he may be able to comply with the favorable termination requirement in the future. Accordingly, we conclude the demurrer should have been sustained with leave to amend. By analogy to *Coscia v. McKenna & Cuneo* (2001) 25 Cal.4th 1194, 1210-1211 (*Coscia*), we further conclude that the malpractice cause of action should be stayed during the period in which Jones "timely and diligently" pursues a favorable termination of the SVPA proceedings.

Turning to Jones's cause of action for violations of his civil rights under title 42 United States Code section 1983 (section 1983), we conclude that the trial court properly sustained the demurrer without leave to amend.

We therefore affirm in part, reverse in part, and remand for further proceedings.

## I. BACKGROUND

In 1988, Jones was convicted of one count of lewd and lascivious conduct with force upon a child under age 14 (Pen. Code, § 288, subd. (b)), eight counts of lewd and lascivious conduct upon a child under the age of 14 (Pen. Code, § 288, subd. (a)), and four counts of sodomy (Pen. Code, § 286, subd. (c)). (*People v. Jones* (Dec. 7, 1990, C006074) [nonpub. opn.], p. 1.)[3] Jones admitted he had a prior felony conviction (Pen. Code, § 667.5, subd. (b)) and was sentenced to 33 years in prison. (*People v. Jones, supra,* C006074 at p. 2.) On appeal, another panel of this court modified the judgment to

---

[3] We take judicial notice on our own motion of the court's opinion in *People v. Jones, supra,* C006074. (See Evid. Code, §§ 452, subd. (c), 459; *Deschene v. Pinole Point Steel Co.* (1999) 76 Cal.App.4th 33, 37, fn. 2 [sua sponte judicial notice].)

3

stay execution of a two year term with respect to one count of lewd and lascivious conduct upon a child under the age of 14, thereby reducing Jones's aggregate sentence to 31 years. (*Id.* at p. 18.)

Jones was released from prison in 2004 and transferred to the Sacramento County jail pending SVPA commitment proceedings. Jones was subsequently released from the county jail, then arrested on a body attachment and detained at Coalinga State Hospital (CSH) pending SVPA commitment proceedings. (See *People v. Clay Joseph Jones*, Sacramento Superior Court Case No. 80213; *People v. Clay Joseph Jones,* Sacramento Superior Court Case No. 81875.)

In September 2004, Jones, through his former counsel, Robert J. Saria, filed a petition for habeas corpus in this court. (*In re Clay Joseph Jones on Habeas Corpus* (Oct. 7, 2004, C047835).) The petition was denied. Jones alleges that Saria "botched" the petition, resulting in unspecified litigation against Saria.

Whisenand was appointed to represent Jones in connection with the SVPA proceedings in July 2007. According to the complaint, Whisenand failed to communicate with Jones, failed to investigate, failed to secure expert witnesses, failed to prepare for trial, and generally failed to render effective assistance of counsel, "resulting in the denial of due process and equal protection of the laws as well as wrongful prolonged incarceration." The complaint further alleges that, "Defendant(s) named herein are being sued . . . for malpractice, resulting in the plaintiff's erroneous loss of liberty; State and Federal Civil Rights Violations[,] Loss of Liberty, Mental and Emotional Trauma (stigma from being erroneously confined in a mental institution), false imprisonment, and mental and emotional suffering."

The complaint suggests that Jones would have prevailed in the SVPA proceedings, but for Whisenand's negligence. According to Jones, "Had counsel investigated independently, and also obtained the services of an expert to assist the defense, counsel would have had a high probability of overcoming or preventing the current finding by the

4

court." The complaint does not specify which adverse "finding" may have been overcome or prevented. We take judicial notice of the fact that the SVPA trial has not taken place, and appears to have been pending since 2004.[4] Against this background, we understand Jones to complain that Whisenand neglected his case over a period of years, necessitating multiple continuances of the SVPA trial date, when, according to Jones, there was a high probability that he would have been deemed not to be an SVP and released, had Whisenand been diligent in defending him.

Jones commenced the instant action on December 31, 2013. At the time, Jones's SVPA trial was scheduled to commence in mid-January 2014. Jones's initial complaint asserts causes of action for legal malpractice and civil rights violations based on the allegations described above. The initial complaint seeks (1) a declaration of Jones's right to counsel, (2) an injunction barring Whisenand and the entire public defender's office from representing Jones in the pending SVPA proceeding , appointing new counsel, and staying the SVPA proceedings pending resolution of the instant action, and (3) damages for "Deliberate ineffective assistance of counsel, with gross negligence; harm to his said SVP case and defence [*sic*]; and violations of his State and Federal Constitutional Rights, including but not limited to, denial of Due Process, loss of liberty, false imprisonment, and mental & emotional suffering."

Whisenand demurred to the initial complaint on the grounds that Jones (1) failed to plead actual innocence of all charges in the underlying criminal case or post-conviction exoneration, (2) failed to show that his detention in CSH is unlawful, and (3) failed to show that Whisenand was a "state actor" acting "under color of state law." The trial court sustained the demurrer with leave to amend.

---

[4] Whisenand's request for judicial notice is granted.

Jones filed the first amended complaint on December 5, 2014.  The first amended complaint omits the prayer for declaratory relief, injunctive relief and damages. Whisenand demurred a second time, on the same grounds as before.  Jones did not oppose the demurrer, which was sustained without leave to amend following an uncontested hearing on March 27, 2015.[5]  Instead, Jones filed a "motion for leave to file second amended complaint," on March 20, 2015.[6]  The trial court entered a judgment of dismissal in Whisenand's favor on April 15, 2015.  The trial court denied Jones's motion for leave to amend by order dated May 7, 2015.

Jones filed a timely notice of appeal.

## II.  DISCUSSION

### A.    *Standard of Review*

A demurrer tests the legal sufficiency of the factual allegations in a complaint. We independently review the trial court's ruling on a demurrer and determine de novo whether the complaint alleges facts sufficient to state a cause of action or discloses a complete defense.  (*Loeffler v. Target Corp.* (2014) 58 Cal.4th 1081, 1100; *Committee for Green Foothills v. Santa Clara Bd. of Supervisors* (2010) 48 Cal.4th 32, 42.)  We assume the truth of properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters of which judicial notice has been taken. (*Evans v. City of Berkeley* (2006) 38 Cal.4th 1, 20; *Schifando v. City of Los Angeles*

---

[5] Jones suggests that he did, in fact, file an opposition to Whisenand's demurrer.  No such opposition appears in the record.

The trial court's order does not address Jones's apparent causes of action for "false imprisonment, and mental and emotional suffering."  Jones does not raise the issue on appeal, and we deem the causes of action and any error arising from the trial court's failure to address them abandoned.

[6]  Jones asserts that the motion for leave to amend attached a copy of a proposed second amended complaint.  No such pleading appears in the record.

6

(2003) 31 Cal.4th 1074, 1081 (*Schifando*).) We liberally construe the pleading with a view to substantial justice between the parties. (Code Civ. Proc., § 452; *Schifando, supra,*, at p. 1081.)

We may affirm the judgment on any ground apparent from the record, regardless of the grounds upon which the trial court sustained the demurrer. (*Carman v. Alvord* (1982) 31 Cal.3d 318, 324; *Blue Chip Enterprises, Inc. v. Brentwood Sav. & Loan Assn.* (1977) 71 Cal.App.3d 706, 712.)

B.    *Legal Malpractice*

" 'The failure to provide competent representation in a civil or criminal case may be the basis for civil liability under a theory of professional negligence. In a legal malpractice action arising from a civil proceeding, the elements are (1) the duty of the attorney to use such skill, prudence, and diligence as members of his or her profession commonly possess and exercise; (2) a breach of that duty; (3) a proximate causal connection between the breach and the resulting injury; and (4) actual loss or damage resulting from the attorney's negligence. [Citations.] In a legal malpractice case arising out of a criminal proceeding, California, like most jurisdictions, also requires proof of actual innocence. [Citations.]' " (*Wilkinson v. Zelen* (2008) 167 Cal.App.4th 37, 45.)

"When a former criminal defendant sues his or her attorney for legal malpractice resulting in conviction, the former defendant's actual innocence of the underlying criminal charges is a necessary element of the cause of action. [Citation.] Moreover, the 'plaintiff must obtain postconviction relief in the form of a final disposition of the underlying criminal case—for example, by acquittal after retrial, reversal on appeal with directions to dismiss the charges, reversal followed by the People's refusal to continue the prosecution, or a grant of habeas corpus relief—as a prerequisite to proving actual innocence in a malpractice action against former criminal defense counsel.' [Citation.]" (*Khodayari v. Mashburn* (2011) 200 Cal.App.4th 1184, 1189.) For convenience, we shall

7

refer to both of these elements—actual innocence of the convictions and postconviction relief from the convictions—as the actual innocence requirement.  (*Ibid.*)

This case requires us to determine whether the actual innocence requirement applies to SVPA proceedings.  No published decision appears to have addressed this issue.  Because our analysis requires an understanding of the SVPA, we begin with an overview of the relevant statutory scheme.

### 1.       *Overview of the SVPA*

The SVPA provides for involuntary civil commitment of an offender immediately upon release from prison if the offender is found to be an SVP.  (*People v. Yartz* (2005) 37 Cal.4th 529, 534.)  "The SVPA was enacted to identify incarcerated individuals who suffer from mental disorders that predispose them to commit violent criminal sexual acts, and to confine and treat such individuals until it is determined they no longer present a threat to society."  (*People v. Allen* (2008) 44 Cal.4th 843, 857.)  " '[A]n SVPA commitment proceeding is a special proceeding of a civil nature, because it is neither an action at law nor a suit in equity, but instead is a civil commitment proceeding commenced by petition independently of a pending action.' "  (*People v. Yartz, supra,* at p. 536.)

An SVP is defined as "a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior."  (§ 6600, subd. (a)(1).)  A "diagnosed mental disorder" is defined to include "a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others."  (§ 6600, subd. (c).)

The procedure for determining whether a convicted sex offender is an SVP typically begins when an offender is scheduled to be released from custody.  (*Turner v.*

*Superior Court* (2003) 105 Cal.App.4th 1046, 1054.) " 'Under section 6601, whenever the Director of Corrections determines that a defendant serving a prison term may be a sexually violent predator, the Department of Corrections and the Board of Prison Terms undertake an initial screening "based on whether the person has committed a sexually violent predatory offense and on a review of the person's social, criminal, and institutional history." (§ 6601, subd. (b).)' " (*People v. Hurtado* (2002) 28 Cal.4th 1179, 1182-1183.)

The screening is conducted in accordance with an assessment protocol developed by the Department of State Hospitals (DSH), formerly known as the Department of Mental Health. (*People v. Hurtado, supra,* 28 Cal.4th at p. 1183.) " 'If that screening leads to a determination that the defendant is likely to be a sexually violent predator, the defendant is referred to the [DSH] for an evaluation by two psychiatrists or psychologists. (§ 6601, subds. (b) & (c).) If both find that the defendant "has a diagnosed mental disorder so that he or she is likely to engage in acts of sexual violence without appropriate treatment and custody" (§ 6601, subd. (d)), the department forwards a petition for commitment to the county of the defendant's last conviction (*ibid.*). If the county's designated counsel concurs with the recommendation, he or she files a petition for commitment in the superior court. (§ 6601, subd. (i).)' " (*Ibid.*)

Upon filing of the SVPA commitment petition, the trial court must review the petition and determine "whether the petition states or contains sufficient facts that, if true, would constitute probable cause to believe that the [alleged SVP] is likely to engage in sexually violent predatory criminal behavior upon his or her release." (§ 6601.5.) If the trial court determines the petition, on its face, supports a finding of probable cause, then the court orders that the offender be kept in a secure facility until a probable cause hearing under section 6602 is conducted. (§ 6601.5.)

The probable cause hearing must be conducted within 10 calendar days of the issuance of the order finding the petition would support a finding of probable cause.

9

(§ 6601.5)  The purpose of the probable cause hearing is to determine whether "there is probable cause to believe that the individual named in the petition is likely to engage in sexually violent predatory criminal behavior upon his or her release."  (§ 6602, subd. (a).) The probable cause hearing is an adversarial hearing where the offender has the right to counsel.  (*Ibid.*)

If the trial court finds probable cause, it orders a trial to determine whether the offender is an SVP under section 6600.  (§ 6602, subd. (a).)  The offender must remain in a secure facility between the time probable cause is found and the time trial is completed. (*Ibid.*)  The offender is entitled to a trial by jury, and the jury's verdict must be unanimous.  (§ 6603, subds. (a) & (f).)  The offender is also entitled to assistance of counsel and to retain experts or professional persons to perform an examination on his or her behalf.  ( § 6603, subd. (a).)  At trial, the trier of fact determines whether, beyond a reasonable a doubt, the offender is an SVP.  (§ 6604.)  If the trier of fact determines the offender is an SVP, the offender is committed for an indefinite term to the custody of the DSH for appropriate treatment and confinement in a secure facility.  (*Ibid.*)  As noted, Jones has been confined at CSH pending trial since 2004.

### 2.    *The Actual Innocence Requirement*

Jones argues that the actual innocence requirement does not apply to the present malpractice cause of action.  He emphasizes that the actual innocence requirement applies to *criminal* malpractice, and the present cause of action alleges legal malpractice in SVPA proceedings, which are civil in nature.  (*People v. Allen, supra,* 44 Cal.4th at p. 860 ["Proceedings to commit an individual as a sexually violent predator in order to protect the public are civil in nature"]; *Moore v. Superior Court* (2010) 50 Cal.4th 802, 815 ["SVP trials are ' "special proceedings of a civil nature," ' wholly unrelated to any criminal case"].)

Whisenand counters that SVPA proceedings share many features in common with criminal proceedings.  (See *Reilly v. Superior Court* (2013) 57 Cal.4th 641, 648 (*Reilly*)

10

["Though civil in nature, [an SVP trial] contains a number of procedural safeguards commonly associated with criminal trials, including the alleged SVP's right to a jury trial (§ 6603, subd. (a)), to assistance of counsel (*ibid.*), and to a unanimous jury finding that he or she is an SVP beyond a reasonable doubt before he or she may be committed (§ 6604)"].)  Whisenand also argues that public policy considerations justify the application of the actual innocence requirement to SVPA proceedings.  (See *Wiley v. County of San Diego* (1998) 19 Cal.4th 532, 538-539 (*Wiley*) [explaining that public policy considerations support the imposition of the actual innocence requirement in the context of a cause of action for criminal malpractice].)  Jones has the better argument.

As noted, SVPA proceedings take place *after* an offender has served his or her prison term.  (See *Reilly, supra,* 57 Cal.4th at p. 646 ["Under the SVPA, the state can civilly commit individuals found to be SVPs after they conclude their prison terms"]; *People v. Superior Court (Troyer)* (2015) 240 Cal.App.4th 654, 663 ["Under the SVPA, a convicted sex offender may be declared to be an SVP and civilly committed after completing the criminal sentence"].)  Although there may be "unusual circumstances" in which an offender obtains postconviction relief after an SVP petition is filed (see, e.g., *In re Smith, supra,* 42 Cal.4th at p. 1270), for the most part, such offenders have not obtained postconviction relief, and cannot satisfy the actual innocence requirement.  (See *Coscia, supra,* 25 Cal.4th at p. 1201 ["[A]n individual convicted of a criminal offense must obtain reversal of his or her conviction, or other exoneration by postconviction relief in order to establish actual innocence in a criminal malpractice action"].)  Requiring such offenders to comply with the actual innocence requirement would effectively foreclose the possibility that they could ever recover for legal malpractice in the course of their SVPA proceedings.  Nothing in the SVPA suggests that the Legislature intended to preclude SVPs and alleged SVPs from recovering for legal malpractice.

Whisenand argues that public policy considerations justify application of the actual innocence requirement to SVPA proceedings.  Our Supreme Court has described

11

the public policy considerations underlying the actual innocence requirement as follows: "First, ' " '[p]ermitting a convicted criminal to pursue a legal malpractice claim without requiring proof of innocence would allow the criminal to profit by his own fraud, or to take advantage of his own wrong, or to found [a] claim upon his iniquity, or to acquire property by his own crime.' " ' [Citation.] [¶] Second, ' "allowing civil recovery for convicts impermissibly shifts responsibility for the crime away from the convict." ' [Citation.] A plaintiff convicted of an offense should bear sole responsibility for the consequences of his or her criminal acts; ' "[a]ny subsequent negligent conduct by a plaintiff's attorney is superseded by the greater culpability of the plaintiff's criminal conduct. [Citation.]" [Citation.]' [Citation.] 'The fact that nonnegligent counsel "could have done better" may warrant postconviction relief, but it does not translate into civil damages, which are intended to make the plaintiff whole.' [Citation.] 'Only an innocent person wrongly convicted due to inadequate representation has a compensable injury because in that situation the nexus between the malpractice and palpable harm is sufficient to warrant a civil action, however inadequate, to redress the loss. [Citation.]' [Citation.] [¶] Third, guilty defendants have an adequate remedy in the form of postconviction relief for ineffective assistance of counsel. [Citation.] 'Not only does the [United States] Constitution guarantee this right [under the Sixth Amendment], any lapse can be rectified through an array of postconviction remedies, including appeal and habeas corpus.' [Citation.] Moreover, avoiding a procedure that would involve retrying criminal prosecutions in tort actions for malpractice is consistent with ' " 'a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.' " ' " (*Coscia, supra,* 25 Cal.4th at p. 1200; see *Wiley, supra,* 19 Cal.4th at pp. 537, 542-543.)

Many of these public policy considerations are inapplicable here. Because SVPs and alleged SVPs have already paid their debt to society for their underlying crimes, they cannot be seen as profiting from their crimes or shifting responsibility for their criminal

acts when they sue for legal malpractice occurring during the course of SVPA proceedings. (*People v. Rasmuson* (2006) 145 Cal.App.4th 1487, 1504 ["[C]ommitment under the SVPA is a civil commitment procedure, which . . . commits a defendant indefinitely, after he has already paid his debt to society by serving out his prison term" (fn. omitted)].) These public policy considerations cannot be used to justify the application of the actual innocence requirement in the circumstances presented here. However, Jones's malpractice cause of action implicates the " ' " 'strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.' " ' " (*Coscia, supra,* 25 Cal.4th at p. 1200.) As we shall discuss, Jones's malpractice cause of action necessarily implies the invalidity of his confinement, which justifies the application of a related pleading rule: The favorable termination requirement.

3.      *The Favorable Termination Requirement*

In *Heck v. Humphrey* (1994) 512 U.S. 477 (*Heck*), the United States Supreme Court considered "whether a state prisoner may challenge the constitutionality of his conviction in a suit for damages under [section] 1983." (*Id.* at p. 478.) The court concluded that a state prisoner's section 1983 claims are not cognizable when the resolution of such a claim would call into question the validity of an outstanding criminal conviction or sentence. (*Heck, supra,* at pp. 486-487.) Thus, "in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a [section] 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination or called into question by a federal court's issuance of a writ of habeas corpus, [section 2254 of title 28 of the United States Code]." (*Ibid.*, fn. omitted.)

13

In reaching this conclusion, the court began with the principle that section 1983 " 'creates a species of tort liability.' " (*Heck, supra,* 512 U.S. at p. 483.) The court analogized Heck's section 1983 claim to a malicious prosecution claim, which requires termination of the prior criminal proceeding in favor of the accused. (*Heck, supra,* at p. 484.) The court explained: "This requirement 'avoids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the claimant [*sic*] succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.' [Citation.]" (*Ibid.*)

"Furthermore," the court continued, " 'to permit a convicted criminal defendant to proceed with a malicious prosecution claim would permit a collateral attack on the conviction through the vehicle of a civil suit.' [Citation.] This Court has long expressed similar concerns for finality and consistency and has generally declined to expand opportunities for collateral attack, [citations]. We think the hoary principle that civil actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to [section] 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement, just as it has always applied to actions for malicious prosecution." (*Heck, supra,* 512 U.S. at pp. 484-486, fns. omitted.)

"Thus," the court concluded, "when a state prisoner seeks damages in a [section] 1983 suit, the district court must consider whether a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence; if it would, the complaint must be dismissed unless the plaintiff can demonstrate that the conviction or sentence has already been invalidated. But if the district court determines that the plaintiff's action, even if successful, will *not* demonstrate the invalidity of any outstanding criminal judgment against the plaintiff, the action should be allowed to

14

proceed, in the absence of some other bar to the suit." (*Heck, supra,* 512 U.S. at pp. 486-487, fns. omitted.)

In *Huftile v. Miccio-Fonseca* (9th Cir. 2005) 410 F.3d 1136, 1140 (*Huftile*), the Ninth Circuit held that *Heck* applies to detainees under the SVPA. There, the Ninth Circuit considered an SVP's section 1983 suit challenging the procedures used to evaluate him under the SVPA. (*Huftile, supra,* at p. 1140.) The Ninth Circuit concluded that "a judgment in favor of Huftile in his [section] 1983 action would necessarily imply the invalidity of his civil commitment." (*Id.* at p. 1141.) Accordingly, the court concluded that *Heck* barred the alleged SVP's claim. (*Ibid.*; see also *Hubbs v. Alamao* (C.D.Cal 2005) 360 F.Supp.2d 1073, 1080 [finding that *Heck* barred SVP's claim that evaluating psychologist committed medical malpractice by relying on false information to recommend civil commitment where allegations necessarily implied the invalidity of SVP's otherwise lawful commitment].)[7]

Our Supreme Court adopted the *Heck* rule, and extended the rule to common law tort causes of action, in *Yount v. City of Sacramento* (2008) 43 Cal.4th 885, 902 (*Yount*). There, the court considered whether, under *Heck*, the plaintiff's conviction for resisting an officer barred his subsequent cause of action for battery based on the arresting officer's allegedly unlawful use of deadly force. (*Id.* at pp. 889-892.) The court explained: "*Heck,* of course, is a rule of federal law that applies only to federal causes of

---

[7] We note that the *Heck* rule, which requires dismissal of civil suits that necessarily imply the invalidity of the plaintiff's conviction or sentence, only applies when there is an "extant conviction" and not merely an "anticipated future conviction." (*Wallace v. Kato* (2007) 549 U.S. 384, 393-394 (*Wallace*) [recognizing that *Heck* applies only when there exists " 'a conviction or sentence that has *not* been . . . invalidated' "].) Where the plaintiff's civil suit implies the invalidity of an anticipated future conviction, the "common practice" is "to stay the civil action until the criminal case or the likelihood of a criminal case is ended." (*Id.* at p. 394.) Upon conclusion of the criminal prosecution, the civil action may either proceed or, in the event of a conviction, be dismissed as barred by *Heck.* (*Ibid.*) As we shall discuss, we adopt a similar approach here.

action that challenge the validity of a state conviction.  [Citation.]  But we cannot think of a reason to distinguish between section 1983 and a state tort claim arising from the same alleged misconduct and, as stated above, the parties offer none. . . .  Indeed, Yount's common law battery cause of action, like his section 1983 claim, requires proof that Officer Shrum used unreasonable force.  [Citation.]" (*Id.* at p. 902.)

"Moreover," the court continued, "this court has recently reiterated its concern about the use of civil suits to collaterally attack criminal judgments in the context of a convicted criminal defendant's civil action against his or her attorney for legal malpractice.  (See *Coscia*[, *supra,*] 25 Cal.4th [at p.] 1197.)  In holding that a criminal defendant must obtain exoneration by postconviction relief as a prerequisite to obtaining relief for the legal malpractice that led to that conviction, we recognized that our ruling would preclude recovery 'even when ordinary collateral estoppels principles otherwise are not controlling, for example because a conviction was based upon a plea of guilty that would not be conclusive in a subsequent civil action involving the same issues.'  (*Id.* at p. 1204.)  Our justification for a bar of that scope included the promotion of judicial economy and the ' " 'strong judicial policy' " ' recognized in *Heck* itself  ' " 'against the creation of two conflicting resolutions arising out of the same or identical transaction.' " '  ([*Ibid.*], quoting *Heck, supra,* 512 U.S. at p. 484.)" (*Yount, supra,* 43 Cal.4th at p. 902.)  Accordingly, the court concluded that the favorable termination rule applied to Yount's cause of action for battery.  (*Ibid.*)

The present cause of action for legal malpractice raises similar concerns about judicial economy and the avoidance of conflicting resolutions.  Jones alleges that Whisenand committed legal malpractice by rendering ineffective assistance of counsel during the pending SVPA proceedings, thereby prolonging Jones's confinement.  To prevail on this theory, Jones would have to show that, but for Whisenand's negligence, he would have been deemed a non-SVP and released.  (See *Viner v. Sweet* (2003) 30 Cal.4th 1232, 1241 [To prevail on a cause of action for legal malpractice, the plaintiff must

16

establish "that *but for* the alleged negligence of the defendant attorney, the plaintiff would have obtained a more favorable judgment or settlement in the action in which the malpractice allegedly occurred"].)  Success on the merits of such a cause of action would necessarily imply the invalidity of Jones's current confinement.

A successful malpractice cause of action would imply the invalidity of determinations made during the SVPA proceedings, including any eventual order of commitment, by suggesting that they are the result of the incompetence of counsel, rather than the lawful operation of the SVPA.  A successful malpractice cause of action would also present "formidable practical problems . . . , including the difficulty of quantifying damages and the complexity of the standard of proof, which must combine the preponderance of the evidence standard with the reasonable doubt standard" applicable in SVPA proceedings.  (*Brooks v. Shemaria* (2006) 144 Cal.App.4th 434, 442-443 [actual innocence requirement does not apply to client's claim for return of unused portion of retainer].)  A successful malpractice cause of action would also create a risk of inconsistent adjudications, raising the possibility that Jones could recover damages for his otherwise lawful confinement.  Such an outcome would undermine public confidence in the judicial system, promote parallel litigation over the reasons for Jones's confinement, and invite collateral attacks on the SVPA proceedings.

Under the circumstances, we conclude the " ' "strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction" ' " precludes Jones from pursuing a cause of action for legal malpractice committed during the course of the SVPA proceedings, unless and until those proceedings have been terminated in his favor.  (*Coscia, supra,* 25 Cal.4th at p. 1204, citing *Heck, supra,* 512 U.S. at p. 484.)  Guided by the public policy considerations discussed in *Heck, Coscia,* and *Yount,* we further conclude that Jones must allege favorable termination of the underlying SVPA proceedings as an element of any cause of action for legal malpractice during the course of those proceedings.

17

Jones cannot comply with the favorable termination requirement, as the SVPA proceedings against him are still pending. We therefore conclude that the trial court properly sustained Whisenand's demurrer to the cause of action for legal malpractice. (Cf. *Coscia, supra,* 25 Cal.4th at p. 1211.) However, the pending SVPA proceedings could be resolved in Jones's favor, in which case, Jones would be able to amend his complaint to comply with the favorable termination requirement. (*Ibid.*) Under the circumstances, we conclude that leave to amend should have been granted, and Jones's cause of action for legal malpractice should be stayed until the SVPA proceedings are concluded.

We find support for our conclusion by analogy to *Coscia*. There, the court explained: "Coscia's complaint which was filed before [*Wiley], supra,* 19 Cal.4th 532, did not allege actual innocence. It appears, however, that there is a reasonable possibility that the defect identified by [defendants] can be cured by amendment. Accordingly, we conclude that Coscia should be permitted an opportunity to amend his complaint. [Citation.] The trial court should stay proceedings in the present action as necessary to permit Coscia's timely pursuit of postconviction remedies." (*Coscia, supra,* 25 Cal.4th at p. 1211; see also *Wallace, supra,* 549 U.S. at pp. 393-394 [when the plaintiff files a civil suit implying the invalidity of an anticipated future conviction, "it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended"].) We adopt the same approach here.

We emphasize that our approach does not leave Jones without a remedy for Whisenand's alleged ineffective assistance while the SVPA proceedings are pending. Although Jones cannot currently pursue a cause of action for legal malpractice, he has alternate remedies for ineffective assistance of counsel, including *Marsden* motions (see *People v. Hill* (2013) 219 Cal.App.4th 646, 652 [alleged SVPs have a due process right to a hearing pursuant to *People v. Marsden* (1970) 2 Cal.3d 118 to determine whether their

counsel should be replaced]), petitions for habeas relief (see, e.g., *In re Wright* (2005) 128 Cal.App.4th 663 [habeas petition asserting ineffective assistance of counsel in SVPA proceeding]), and direct appeal from any eventual order of commitment (see, e.g., *People v. Landau* (2013) 214 Cal.App.4th 1, 17-18 [considering ineffective assistance of counsel claim on appeal from order of commitment].) We therefore remand the case to the trial court with orders to stay the malpractice action during the period in which Jones "timely and diligently" pursues a favorable termination in the SVPA proceedings. (*Coscia, supra,* 25 Cal.4th at pp. 1210, 1211.)

## C.     Section 1983

Next, Jones contends the trial court erred in sustaining the demurrer to the section 1983 cause of action because Whisenand, a public defender, was a "state actor" as a matter of California law. We disagree.

It is well established that public defenders performing a lawyer's traditional functions as counsel to a defendant do not act under color of state law and, therefore, are not subject to suit section 1983. (*Polk County v. Dodson* (1981) 454 U.S. 312, 325 ["a public defender does not act under color of state law when performing a lawyer's traditional functions as counsel to a defendant in a criminal proceeding"].) Relying on *Craft v. Superior Court* (2006) 140 Cal.App.4th 1533, 1539, fn. 2 (*Craft*), Jones argues a different rule applies in California. We are not persuaded.

Although *Craft* states that, "Public defenders are state actors," it does so in the context of a defendant's speedy trial motion. (*Craft, supra,* 140 Cal.App.4th at p. 1539, fn. 2.) *Craft* does not discuss section 1983 and does not support an argument that public defenders performing a lawyer's traditional function in SVPA proceedings can be said to be acting under color of state law for purposes of section 1983. We therefore conclude that *Craft* is inapposite.

Jones does not identify any other facts that could support the conclusion that Whisenand was acting under color of state law during the underlying SVPA proceedings.

19

We therefore conclude that the trial court properly sustained Whisenand's demurrer to the section 1983 cause of action without leave to amend.

## III. DISPOSITION

The trial court's judgment and demurrer rulings are affirmed in part and reversed in part. We affirm the trial court's order sustaining the demurrer without leave to amend Jones's cause of action for civil rights violations under section 1983. We also affirm the order sustaining the demurrer to Jones's cause of action for legal malpractice, but reverse insofar as leave to amend was denied.

We remand this matter to the trial court with directions to stay the malpractice action during the period in which Jones timely and diligently pursues a favorable termination in the pending SVPA proceedings. The parties shall bear their own costs on appeal. (Cal. Rules of Court, rule 8.278(a)(5).)

/S/

RENNER, J.

We concur:

/S/

ROBIE, Acting P. J.

/S/

DUARTE, J.

20