Filed 11/18/20  P. v. Irvin CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>ROBERT IRVIN,<br><br>    Defendant and Appellant. | B301745<br>(Los Angeles County<br> Super. Ct. No. ZM021280) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Roger Ito, Judge.  Affirmed.

Christian C. Buckley, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Paul M. Roadarmel, Jr., Supervising Deputy Attorney General, and Allison H. Chung, Deputy Attorney General, for Plaintiff and Respondent.

The day before a court trial commenced on a petition filed by the Los Angeles County District Attorney's Office to determine whether appellant Robert Irvin should serve an indeterminate term of commitment under the Sexually Violent Predator (SVP) Act (Welf. & Inst. Code, § 6600 et seq.),[1] Irvin's appointed defense counsel met with petitioner's counsel and the trial judge in chambers for a trial status conference. During the off-the-record conference, as later confirmed in open court, defense counsel agreed to proceed with a court trial rather than a jury trial. Following trial, the court committed Irvin to an indeterminate term of commitment after it found beyond a reasonable doubt that Irvin was a sexually violent predator (§ 6600, subd. (a)(1)).

On appeal, Irvin challenges the constitutionality of section 6603, subdivision (f), which provides that if an SVP defendant or the petitioning attorney "does not demand a jury trial, the trial shall be before the court without a jury." Irvin asserts that the statute violates his federal and state due process "rights" to a judicial advisement and personal waiver of his right to a jury trial. He bases these rights on the reasoning set forth in *People v. Blackburn* (2015) 61 Cal.4th 1113 (*Blackburn*), *People v. Tran* (2015) 61 Cal.4th 1160 (*Tran*), and *People v. McKee* (2010) 47 Cal.4th 1172 (*McKee*), and the four-factor balancing test used for determining whether certain due process protections should be afforded to litigants in civil commitment proceedings. He also contends that section 6603 violates equal protection principles because

___

[1]  Unspecified references to statutes are to the Welfare and Institutions Code.

2

the Mentally Disordered Offender (MDO) Act and the statutory scheme for extending involuntary commitment for persons who previously pleaded not guilty by reason of insanity (NGI), provide for similar civil commitment proceedings, and expressly provide for judicial advisement and personal waiver of the right to a jury trial.

The Attorney General disputes these contentions and asserts that Irvin forfeited his equal protection challenge for failing to raise it below.

We agree with the Attorney General's assertion, and conclude that Irvin has forfeited his equal protection challenge. To the extent Irvin asserts his trial counsel was ineffective for failing to raise that challenge below, he has not demonstrated deficient performance or resulting prejudice (i.e. that he would have demanded a jury trial).

With regard to Irvin's due process challenge, we conclude that a judicial advisement and personal waiver of the right to a jury trial are not constitutionally mandated in SVP proceedings. We therefore affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

I. *The Petition and Pretrial Proceedings*

On May 22, 2013, approximately four years before Irvin was scheduled to be released from prison after committing a lewd or lascivious act on a child under the age of 14 years (Pen. Code, § 288, subd. (a)), a petition was filed petition seeking to commit Irvin as a sexually violent predator. The petitioner alleged that Irvin had been convicted on two separate occasions of committing lewd and lascivious acts on a child under the age of 14; that Irvin has a diagnosed mental

3

disorder; and that Irvin poses a danger to the health and safety of others.[2]

With the assistance of appointed counsel, Irvin waived reading of the petition and statement of rights, and denied the allegations in the petition. On May 9, 2014, the court found probable cause to believe that Irvin was likely to engage in sexually violent predatory criminal behavior upon his release, and ordered him to remain in custody pending trial.

According to a minute order dated September 25, 2019 (there is no transcript), the court held a trial status conference "in-chambers with the people and [Irvin's] counsel present, off the record." "Both sides announce[d] ready and agree[d] to a court trial," which the court set for the next day.

The next day, September 26, 2019, in open court and before the petitioner called its first trial witness, the court addressed Irvin as follows: "Mr. Irvin previously—the matter had been sent to this court and we had an in chambers conference regarding the procedure with which the case is going to be conducted. I'm sure that your attorney's already spoke[n] to you about that." Irvin replied, "Yes." The court then asked the petitioner to call its first witness. Prior to resuming

---

[2]  A "'[s]exually violent predator' means a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he . . . will engage in sexually violent criminal behavior." (§ 6600, subd. (a)(1).) A sexually violent offense includes a felony conviction under Penal Code section 288, subdivision (a). (§ 6600.1.)

4

trial the next day, Irvin personally waived his appearance for the remainder of trial.

## II.   *The Petitioner's Case*

In 1991, Irvin paid a six-year-old boy $1 to orally copulate his penis for two minutes. Following a guilty plea, Irvin was sentenced to three years imprisonment for committing a lewd act upon a child (Pen. Code, § 288, subd. (a)).

Within three months of being paroled in 1995, Irvin placed his hands inside the clothing and touched the genitals of a four-year-old girl and her six-year-old brother, and he exposed his erect penis and masturbated in front of the children. Irvin again pleaded guilty to committing a lewd act upon a child, and he admitted a five-year serious felony enhancement. He was sentenced to 21 years imprisonment.

During an SVP evaluation with the Department of State Hospitals (DSH) in 2013, Irvin denied committing the 1991 and 1995 offenses. He admitted, however, that he was addicted to sex, and had molested a female child in 1989 when he was 19 years old. Following the interview, the DSH evaluator believed Irvin had sexual fantasies of children.

Two SVP evaluators, Drs. Michael Musacco and Christopher North (both psychologists) testified regarding Irvin's diagnosed mental disorder.[3] Both evaluators concluded that Irvin suffered from a

---

[3]   "'Diagnosed mental disorder' includes a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the

diagnosable mental disorder that predisposes Irvin to the commission of criminal sexual acts: pedophilic disorder, with sexual attraction to both males and females. Dr. Musacco scored Irvin on a Static-99R risk assessment as average to above average.[4] Despite the score, Dr. Musacco believed Irvin posed a substantial risk of reoffending because he had not participated in any treatment, he had denied the commitment offenses, and he could not be safely treated in the community. Dr. North also believed Irvin was likely to reoffend if released,[5] and posed a substantial danger to the health and safety of others.

III. *Irvin's Case*

Deborah Cotterman, an art therapist at Coalinga State Hospital, began treating Irvin in 2017. She testified that Irvin had improved his behavior through coping skills, including walking, watching television, and crocheting.

---

person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others." (§ 6600, subd. (c).)

[4] The Static–99R identifies and assigns "numerical weights to established facts about a particular offender, such as his or her age and history of sexual convictions, as bases for predicting the likelihood he or she will commit new sex offenses." (*People v. Shazier* (2014) 60 Cal.4th 109, 119.)

[5] Dr. North also interviewed Irvin, who stated that he used to think of himself as a pedophile. Irvin stated he did not participate in the Sex Offender Treatment Program during his incarceration because he did not think it would lead to his release, and he had outgrown his pedophilia.

6

Following his own interview with Irvin, defense evaluator Dr. Christopher Fisher concluded that Irvin's pedophilic disorder was in the past despite the fact that the disorder was not in remission. Dr. Fischer scored Irvin in the average category of risk in a Static-99R risk assessment. In Dr. Fisher's opinion, Irvin did not have serious difficulty controlling his sexual behavior that would make him likely to reoffend.

IV.   *Court Finding and Commitment*

Following trial, the court found beyond a reasonable doubt that Irvin was a sexually violent predator within the meaning of the SVP Act. The court issued an order committing Irvin to the custody of the DSH for an indeterminate term.

Irvin filed a timely notice of appeal.

## DISCUSSION

I.   *The SVP Act*

When the Legislature enacted the SVP Act in 1995, "it '"expressed concern over a select group of criminal offenders who are extremely dangerous as the result of mental impairment, and who are likely to continue committing acts of sexual violence even after they have been punished for such crimes. . . . The [SVP] Act provides treatment for mental disorders from which [these offenders] currently suffer and reduces the threat of harm otherwise posed to the public. No punitive purpose was intended.'" (*People v. Otto* (2001) 26 Cal.4th 200, 205 (*Otto*).) Civil commitment under the SVP Act 'can only commence if,

7

after a trial, either a judge or a unanimous jury finds beyond a reasonable doubt that the person is an SVP' (*Cooley v. Superior Court* (2002) 29 Cal.4th 228, 243 (*Cooley*))—that is, an individual who has been convicted of a sexually violent offense against one or more victims and who has a diagnosable mental disorder that makes it likely that he or she will engage in sexually violent criminal conduct of a predatory nature if released. (*Id.* at p. 236; see § 6600, subd. (a)(1).)" (*People v. Superior Court* (*Couthren*) (2019) 41 Cal.App.5th 1001, 1008.)

The trial to determine whether a person should be civilly committed as a sexually violent predator "is the last stage of a complex administrative and judicial process." (*Cooley*, *supra*, 29 Cal.4th at p. 244.) The administrative process includes an extensive screening, referral, and examination to determine whether the person meets the criteria as an SVP. (See § 6601, subds. (a)-(i).)

Once a petition has been filed with the superior court, the judge must review the petition to determine if probable cause exists to believe the person is likely to engage in sexually violent predatory criminal behavior upon his release. (§ 6602, subd. (a).) A failure to find probable cause leads to dismissal of the petition, whereas a finding of probable cause requires a trial on the merits of the petition. (*Ibid.*)

In the event of a trial, an SVP defendant "is entitled to a trial by jury, to the assistance of counsel, to the right to retain experts or professional persons to perform an examination on the person's behalf, and to have access to all relevant medical and psychological records and reports." (§ 6603, subd. (a).) The attorney "petitioning for commitment" also "has the right to demand that the trial be before a jury." (§ 6603,

8

subd. (b).)  "If the person subject to [the SVP Act] or the petitioning attorney does not demand a jury trial, the trial shall be before the court without a jury."  (§ 6603, subd. (f).)  The court or jury (by unanimous verdict) must determine beyond a reasonable doubt whether the person is a sexually violent predator.  (§§ 6603, subd. (f), 6604; see *Cooley, supra,* 29 Cal.4th at p. 236.)  The remaining provisions of the SVP Act provide procedures for periodic review, treatment, and conditional or unconditional release in the event the individual no longer meets the criteria of a sexually violent predator.  (§§ 6604.9–6609.3.)

I.   *An SVP Defendant Is Not Constitutionally Entitled to a Judicial Advisement and Personal Waiver of the Right to a Jury Trial*

Irvin challenges the constitutionality of section 6603, which provides an SVP defendant with the right to a jury trial (subd. (a)), but does not require the trial court to advise or obtain from the SVP defendant a personal waiver of the right to a jury trial.  Irvin does not contend that an SVP defendant possesses a federal or state due process right to a jury trial—the right is purely statutory.  Instead, he contends that an SVP defendant possesses federal or state due process "rights" to (1) a judicial advisement of the statutory right to a jury trial, and (2) a personal waiver of that right.  He asserts a judicial advisement and waiver are required by the reasoning of the California Supreme Court decisions in *Blackburn, supra,* 61 Cal.4th 1113, *Tran, supra,* 61 Cal.4th 1160, and *McKee, supra,* 47 Cal.4th 1172.  He alternatively asserts entitlement to these rights based on the four-factor test used to

9

determine what due process procedures are due in civil commitment proceedings.  We disagree.

### A. *Blackburn, Tran*, and *McKee Do Not Compel A Judicial Advisement and Personal Waiver of the Statutory Right to a Jury Trial in SVP Proceedings*

As has been long recognized, a judicial advisement of a right, and a personal waiver of that right, are procedural safeguards designed to ensure that the person understands the right and can make an intelligent decision whether to waive it.  These safeguards are not themselves inherent aspects of the right involved.  (See *People v. Sivongxxay* (2017) 3 Cal.5th 151, 173, fn. 8 [waiver colloquy is a "'a procedural device; it is not a constitutional end or a constitutional "right"'"]; *Blackburn, supra*, 61 Cal.4th at p. 1125 ["[t]he purpose of an advisement is to inform the defendant of a particular right so that he or she can make an informed choice about whether to waive that right"].)

Whether a personal waiver of the right to a jury trial is compelled as a matter of constitutional procedure depends on whether the right is constitutional or statutory in nature.  "The requirement of an express waiver applies to the constitutional right to a jury trial, but not to jury trial rights that are established only by statute."  (*People v. French* (2008) 43 Cal.4th 36, 46.)  If an express waiver of the right to a jury trial is not required, a judicial advisement of that right is also not required.  (See *Blackburn, supra*, 61 Cal.4th at p. 1125, quoting *People v. Barrett* (2012) 54 Cal.4th 1081, 1105 ["'absent any requirement of a

10

personal waiver, the person facing commitment has no need for an express court advisement of the right to request a jury trial'"].)

The right to a jury trial in an SVP proceeding is a statutory right, not a constitutional right. (*People v. Rowell* (2005) 133 Cal.App.4th 447, 452 (*Rowell*))  In particular, the constitutional right to a jury trial does not apply to proceedings under the SVP Act, because those proceedings are special proceedings that are civil in nature and unknown to the common law. (*Id.* at pp. 451-452; accord, *Corder v. Corder* (2007) 41 Cal.4th 644, 656, fn. 7 [constitutional right to jury trial does not apply to actions in equity or to special proceedings, though the Legislature may provide for a jury trial in these types of actions]; *People v. Montoya* (2001) 86 Cal.App.4th 825, 829, disapproved on another ground in *Blackburn, supra,* 61 Cal.4th 1113.)  Thus, because an SVP defendant's right to a jury trial is based only on statute (§ 6603, subd. (a)), the defendant is not constitutionally entitled to the safeguards of a judicial advisement and a personal waiver. (*Rowell*, *supra*, 133 Cal.App.4th at p. 452; cf. *Blackburn, supra*, 61 Cal.4th at p. 1147 (dis. opn. of Cantil-Sakauye, C.J.) ["advisement and waiver errors are simply procedural errors of a statutory nature"].)

The decisions in *Blackburn, Tran*, and *McKee,* on which Irvin relies, do not compel a different result.  We begin with the companion cases of *Blackburn* and *Tran.*

Both *Blackburn* and *Tran* involved civil commitment proceedings under the Mentally Disordered Offender (MDO) Act (Pen. Code, § 2960 et seq.) and proceedings for extending the involuntary commitment of a

11

person originally committed after pleading not guilty by reason of insanity (NGI) (*id.*, § 1026 et seq.).  In both decisions, the Court focused on the "statutory scheme[s]" of the MDO Act and NGI statutes, which (unlike the SVP Act) expressly require "the trial court to 'advise the person of his or her right to be represented by an attorney and of the right to a jury trial' and to hold a jury trial 'unless waived by both the person and the district attorney.'" (*Blackburn, supra*, 61 Cal.4th at p. 1116, quoting Pen. Code, § 2972, subds. (a)(1) & (a)(2); see *Tran, supra*, 61 Cal.4th at p. 1163 ["we address the meaning of nearly identical language in the statutory scheme for extending the involuntary commitment" of NGI defendants].)[6]  Recognizing that some MDO and NGI defendants may lack the capacity to make a knowing and voluntary waiver, the Court crafted an exception to the statutory requirements of an advisement and personal waiver: courts must judicially advise and obtain a personal waiver from MDO defendants unless "the trial court finds substantial evidence that the defendant lacks the capacity to make a knowing and voluntary waiver." (*Blackburn, supra*, 61 Cal.4th at pp. 1116, 1130; accord, *Tran, supra*, 61 Cal.4th at pp. 1163, 1167.)[7]

---

[6]    "The NGI statute provides that in a commitment extension proceeding, 'the court shall advise the person named in the petition of the right to be represented by an attorney and of the right to a jury trial,' . . . and '[t]he trial shall be by jury unless waived by both the person and the prosecuting attorney.'" (*Tran, supra*, 61 Cal.4th at p. 1163, quoting Pen. Code, § 1026.5, subds. (b)(3) & (b)(4).)

[7]    The Court based the exception on the approach taken in *People v. Masterson* (1994) 8 Cal.4th 965 (*Masterson*), which considered who may

Thus, the requirement of an advisement and waiver of the right to a jury trial (absent substantial evidence of incapacity) established in both *Blackburn* and *Tran* derives not from constitutional principles, but from the express language of the MDO and NGI statutes, which requires an advisement and personal waiver. (See, e.g. *Blackburn, supra*, 61 Cal.4th at pp. 1117, 1121, 1124; *Tran, supra*, 61 Cal.4th at pp. 1163, 1165, 1166.) By contrast, the express language of the SVP Act does not require a judicial advisement or personal waiver of the statutory right to a jury trial in SVP proceedings. "If the person subject to [the SVP Act] or the petitioning attorney *does not demand a jury trial*, the trial shall be before the court without a jury" (§ 6603, subd. (f), italics added). If the Legislature had intended to "'judicially ensure that "the person" knows that he or she has the right to a jury trial'" (*Blackburn, supra*, 61 Cal.4th at p. 1124), it would have included statutory provisions similar to the MDO Act and NGI statutes.[8]

---

waive the right to a jury trial in a mental competency hearing. In *Masterson*, the Court found the statutes governing mental competency hearings (Pen. Code, §§ 1368, 1369) provided a "statutory, not constitutional" right to a jury trial, and did not require a judicial advisement or address the issue of waiver. (See *Masterson, supra*, at p. 969.) In light of that statutory right and the nature of mental competency hearings (i.e. to determine a defendant's present mental competence), the *Masterson* Court held that defense counsel may waive the right to a jury trial even over the defendant's objection or wishes to proceed by jury trial. (*Id.* at pp. 971-972, 974.)

[8] Similar express statutory provisions requiring judicial advisement and personal waiver of the right to a jury trial appear in conservatorship proceedings under the Lanterman-Petris-Short Act. (See *Conservatorship of Heather W.* (2016) 245 Cal.App.4th 378, 383-384 ["Probate Code section 1828, subdivision (a)(6) provides: '. . . *the court shall inform the proposed conservatee* of all of the following . . . . The proposed conservatee has the

13

Like *Blackburn* and *Tran,* the third case on which Irvin relies,
*McKee,* is inapposite. In *McKee,* an SVP defendant raised several
constitutional challenges to provisions within the SVP Act, none of
which is at issue in this case. (See *McKee, supra,* 47 Cal.4th at
pp. 1188-1192.) Irvin relies on the court's mention of a possible due
process issue in light of section 6608 not providing an SVP defendant
with access to experts whenever he or she petitions for release without
approval from the DSH. (*Id* at p. 1192.)[9] However, the Court did not
reach the due process challenge to section 6608, and instead
"reasonably inferred" from another provision in the SVP Act (former
§ 6605, subd. (a)) that section 6608 provided for the appointment of
experts. (*McKee, supra,* at p. 1192 ["Although section 6605, subdivision
(a) does not explicitly provide for the appointment of the expert in
conjunction with a section 6608 petition, such appointment may be
reasonably inferred"].)

Irvin fails to explain how the reasoning of *McKee* applies here, and
we are unable to find one. There is no gap in section 6603, subdivisions
(a), (b), and (f) to be filled by some other provision of the SVP Act (and

---

right to oppose the proceeding, *to have the matter of the establishment of the conservatorship tried by jury . . . .*'"].)

[9]    The issue arose out of inconsistent provisions for the appointment of experts. The SVP Act did not provide for the appointment of experts in connection with a petition for release *without* authorization from the DSH (§ 6608); but did provide for such appointment if the petition was made *with* authorization from the DSH (former § 6605, subd. (d)). (See *McKee, supra,* at pp. 1192-1193.)

14

Irvin has identified no such provision even if there were a gap). The language of the SVP act is clear: an SVP defendant "is entitled to a trial by jury" (§ 6603, subd. (a)), and the petitioning attorney "has the right to demand that the trial be before a jury" (§ 6603, subd. (b)), as does he, but "[i]f the person subject to [the SVP Act] or the petitioning attorney does not demand a jury trial, the trial shall be before the court without a jury" (§ 6603, subd. (f)).

B.    *Due Process Does Not Require a Judicial Advisement of the Right to a Jury Trial, and a Personal Waiver in SVP Cases*

Irvin asserts that the judicial advisement preceding a personal waiver of the right to a jury trial is required under the four-factor balancing test in *Moore v. Superior Court* (2010) 50 Cal.4th 802 (*Moore*) and *Otto, supra,* 26 Cal.4th 200, for determining what process is due in civil commitment proceedings. We disagree.

Like other individuals subject to involuntary civil commitment, SVP defendants are "entitled to certain due process protections." (*Moore*, *supra*, 50 Cal.4th at p. 818.) To determine what those protections are, courts have weighed the following four factors: "(1) the private interest that will be affected by the official action; (2) the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; (3) the government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail; and (4) the dignitary interest in informing individuals of the nature, grounds, and

15

consequences of the action and in enabling them to present their side of the story before a responsible government official." (*Moore, supra,* 50 Cal.4th at p. 819, citing *Allen, supra,* 44 Cal.4th at pp. 862–863, *Otto, supra,* 26 Cal.4th at p. 210.)

Weighing the four factors above, we conclude that SVP defendants are not entitled to the additional safeguards of a judicial advisement and personal waiver of the right to a jury trial. Only the first factor weighs in favor of adding these procedures, as the "'private interests at stake'" involve an SVP defendant's "liberty, reputation, and freedom from unwanted treatment." (*Moore, supra,* 50 Cal.4th at pp. 821-822.) The remaining factors do not weigh in favor of adding the requested procedures.

With regard to the second factor, Irvin has not suggested how the current procedures used in SVP trials—including the burden of proof beyond a reasonable doubt before a jury or the judge; an SVP defendant's entitlement to the effective assistance of counsel; and the ability to present relevant and admissible evidence (§§ 6603 subds. (a), (e), (f), 6604)—pose a risk of an erroneous deprivation of liberty, reputation, or unwanted treatment. As discussed, a judicial advisement and personal waiver are safeguards to ensure that defendants are able to fully understand their right to a jury trial so that they can make an informed choice about whether to waive that right. Irvin has provided no authority, and we are aware of none, to suggest that factfinding by a judge is somehow less reliable and more prone to injustice than factfinding by a jury. (See e.g., *People v. Deere* (1985) 41 Cal.3d 353, 360 (*Deere*) ["[i]n light of the heinous nature of defendant's crimes,

16

counsel may reasonably have believed that an experienced trial judge would be more capable than a jury of viewing the facts dispassionately and possibly exercising mercy on defendant's behalf"], disapproved on another ground in *People v. Bloom* (1989) 48 Cal.3d 1194 (*Bloom*).)[10]

The third factor, which focuses on the government's interest in the fiscal and administrative burdens the additional procedures would entail, weighs against requiring the requested procedures. (See *Blackburn, supra,* 61 Cal.4th at p. 1129 ["we are mindful of 'the "administrative burdens"' and "practical difficulties" of demanding new procedures'"].) SVP proceedings, like other civil commitment proceedings, may involve defendants who lack the capacity to make a knowing and voluntary waiver. (See *Moore, supra*, 50 Cal.4th at p. 825 ["we can reasonably assume that significant potential overlap exists between those mental disorders that qualify someone for commitment as an SVP, on the one hand, and those that produce an inability to comprehend the proceedings or assist in one's defense on the other"].)

---

[10] See also Raymond LaMagna, *(Re)Constitutionalizing Confrontation: Reexamining Unavailability and the Value of Live Testimony*, 79 S. Cal. L. Rev. 1499, 1507 (2006) ["there is no evidence to suggest that bench trials would be less effective at generating accurate outcomes than jury trials"], and Keith N. Hylton & Vikramaditya Khanna, *A Public Choice Theory of Criminal Procedure*, 15 Sup. Ct. Econ. Rev. 61, 92-93, fn. 110 (2007) ["it is a little difficult to believe that jury trials are likely to be more accurate (i.e., less error prone) than bench trials. One doubts there is any empirical evidence to support this result and our legal system also seems to suggest that jury trials may be more prone to errors than bench trials. . . . Much of the law of evidence seems to try to protect the jury from misperceptions and bias, whereas we seem less concerned with these matters for bench trials"].)

As discussed above, to address this issue in the context of the statutorily required advisement and waiver of the right to a jury trial in MDO and NGI proceedings, *Blackburn* and *Tran* require an advisement and personal waiver, unless there is substantial evidence that the defendant lacks the capacity to make a knowing and voluntary waiver. (*Blackburn*, *supra*, 61 Cal.4th at p. 1116.) By analogy to *Blackburn* and *Tran,* were an advisement and personal waiver of the right to a jury trial required in SVP proceedings, then the additional procedure of determining the defendant's capacity to waive the right might be required in some cases. Given that the SVP Act (unlike the MDO and NGI statutes) does not require an advisement and personal waiver of the right to a jury trial, the requirement of an additional analysis of the defendant's competence to waive, and a proceeding at which that evidence is considered prior to any advisement and waiver, would impose a fiscal and administrative burden not tethered to the statutory right involved. (Cf. *Indiana v. Edwards* (2008) 554 U.S. 164, 175 ["[m]ental illness itself is not a unitary concept. It varies in degree. It can vary over time. It interferes with an individual's functioning at different times in different ways"]; *People v. Ford* (2020) __ Cal.App.5th __ [2020 WL 6255338, p. *3] [pretrial hearing to determine NGI defendant's competence "provides an opportunity for meaningful interaction between the defendant and the court on the topic of the defendant's right to a jury"].)[11]

---

[11] Irvin asserts that the government's interests could have been readily ameliorated in this case, because he "personally waived his right to be present and he could have been advised of his jury trial right at the same

18

The final factor focuses on "informing [SVP defendants] of the nature, grounds, and consequences of the action," and "enabling them to present their side of the story." (*People v. Allen* (2008) 44 Cal.4th 843, 862.) These concerns do not support imposition of a judicial advisement and personal waiver. There is no reason to believe that counsel for SVP defendants do not adequately inform them of the right to a jury trial, as well as the nature, grounds, and consequences of an SVP proceeding.[12] (See *Blackburn*, *supra*, 61 Cal.4th at p. 1124; *Conservatorship of Mary K.* (1991) 234 Cal.App.3d 265, 272.) Moreover, an advisement and waiver of the right to a jury trial have no bearing on a defendant's ability to personally present his or her own theories of defense or testimony at trial. (Compare *Allen*, *supra*, 44 Cal.4th at p. 869 [denial of right to testify over objection of trial counsel "would impair the defendant's ability to be heard" by the trier of fact]; *Otto*, *supra*, 26 Cal.4th at pp. 214-215 [admission of multiple hearsay statements did not preclude SVP defendant from presenting his own witnesses and cross-examining any prosecution witness].)

Considering the relevant factors, we conclude SVP defendants are not entitled, as a matter of due process, to a judicial advisement and personal waiver of their right to a jury trial.

---

time." But he misses the point. The relevant due process analysis does not hinge on the peculiar facts of his case, but on the application of the relevant due process principles in SVP proceedings generally.

[12]     Irvin's response to the trial court's inquiry in this case confirmed that he had spoken with counsel about how trial would proceed.

19

II.    *Irvin Has Forfeited His Equal Protection Challenge*

Irvin contends that section 6603 violates equal protection principles, because SVP defendants are not entitled to judicial advisements preceding a personal waiver of the right to a jury trial, whereas persons similarly situated to SVP defendants (i.e. MDO and NGI defendants) are entitled to those safeguards.

The Attorney General contends that Irvin has forfeited this contention for failure to raise an equal protection violation or requesting a judicial advisement and personal waiver of Irvin's right to a jury trial.  We agree.  (*People v. Alexander* (2010) 49 Cal.4th 846, 880, fn. 14; *People v. Rogers* (2006) 39 Cal.4th 826, 854; *People v. Burgener* (2003) 29 Cal.4th 833, 861; *People v. Carpenter* (1997) 15 Cal.4th 312, 362, overruled on another ground in *People v. Diaz* (2015) 60 Cal.4th 1176.)

Anticipating this result, Irvin argues we should address the merits because the contention is "based on a newly announced constitutional principle that could not reasonably have been anticipated at the time of trial"; the claimed error affects his fundamental constitutional rights; and his trial counsel rendered constitutionally ineffective assistance of counsel.

Our discussion above largely dispenses with Irvin's first two arguments.  In any event, we decline to exercise our discretion to address the equal protection issue because it does not hinge on a pure question of law based on undisputed facts.  (See *In re Spencer S.* (2009) 176 Cal.App.4th 1315, 1323; *In re York* (1995) 9 Cal.4th 1133, 1152.)

The petitioner was not afforded an opportunity below to set forth reasons and possibly produce evidence justifying any disparate treatment in MDO or NGI proceedings on the one hand, and SVP proceedings on the other.

With regard to Irvin's final argument—that he received ineffective assistance of counsel—he has not demonstrated that his trial counsel rendered ineffective assistance. (See § 6603, subd. (a) ["A person subject to this article is entitled to . . . the assistance of counsel"]; *In re Wright* (2005) 128 Cal.App.4th 663, 674 [analyzing statutory right to effective assistance of counsel under *Strickland*].) "When challenging a [commitment] on grounds of ineffective assistance, the defendant must demonstrate counsel's inadequacy. To satisfy this burden, the defendant must first show counsel's performance was deficient, in that it fell below an objective standard of reasonableness under prevailing professional norms. Second, the defendant must show resulting prejudice, i.e., a reasonable probability that, but for counsel's deficient performance, the outcome of the proceeding would have been different." (*People v. Mai* (2013) 57 Cal.4th 986, 1009 (*Mai*).)

When examining an ineffective assistance claim, we defer to counsel's "reasonable tactical decisions, and there is a presumption counsel acted within the wide range of reasonable professional assistance. . . . On direct appeal, a [commitment] will be reversed for ineffective assistance only if (1) the record affirmatively discloses counsel had no rational tactical purpose for the challenged act or omission, (2) counsel was asked for a reason and failed to provide one, or (3) there simply could be no satisfactory explanation. All other

21

claims of ineffective assistance are more appropriately resolved in a habeas corpus proceeding." (*Mai, supra,* 57 Cal.4th at p. 1009.)

Irvin has failed to show that his trial counsel engaged in deficient performance by failing to request—whether on equal protection grounds or more generally—a judicial advisement and personal waiver of Irvin's right to a jury trial. The record suggests a reasonable tactical decision: given the nature of his crimes and the issue whether he remained a danger, counsel might well have believed that the judge would be better able to dispassionately evaluate the evidence and apply the law. (See *Deere, supra,* 41 Cal.3d at p. 360, disapproved on another ground in *Bloom, supra,* 48 Cal.3d 1194.)

Irvin has also failed to establish a reasonable probability that, but for counsel's failure to request a judicial advisement and personal waiver of Irvin's right to a jury trial, Irvin would have demanded a jury trial. There is nothing to suggest that Irvin would not have waived his right to a jury trial, had he been advised of the right and asked for a waiver by the court.

//

//

//

//

//

//

//

## DISPOSITION

The judgment is affirmed.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


WILLHITE, J.

We concur:



MANELLA, P. J.



COLLINS, J.