Filed 6/16/21; Certified for Publication 6/28/21 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----

| | |
|---|---|
| THE PEOPLE, | C090439 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF073704) |
| v. | |
| GABRIEL VONZEL PRESLEY, | |
| Defendant and Appellant. | |

Defendant Gabriel Vonzel Presley challenges his commitment pursuant to the Sexually Violent Predator Act (SVPA). (Welf. & Inst. Code, §§ 6600 et seq; all statutory section references that follow are found in the Welfare and Institutions Code unless otherwise stated.) He argues his commitment as a sexually violent predator (SVP) was erroneous because expert testimony at trial was based on case-specific inadmissible hearsay, in violation of *People v. Sanchez* (2016) 63 Cal.4th 665 (*Sanchez*). We affirm the judgment.

1

In 1979, defendant was convicted of rape (Pen. Code, § 261.2). In multiple prosecutions in the 1990s, he was convicted of sexual battery (Pen. Code, § 243.4), indecent exposure (Pen. Code, § 314), and pimping (Pen. Code, § 266h). In 2010, he was again convicted of indecent exposure (Pen. Code, § 314).

In 2013, as defendant's term of incarceration for his 2010 conviction was expiring, a Yolo County prosecutor filed a petition for defendant's commitment pursuant to the SVPA.

Invoking *Sanchez*, defendant filed a pre-trial motion requesting exclusion of case-specific facts (not otherwise admissible) contained in hearsay statements on which any expert testimony would be based. "[D]efense submits that the basis and the hearsay relied upon in the expert's opinion shall not be conveyed to the trier of fact and shall not be used," counsel wrote.

In ruling on that motion, the trial court observed: (a) "based on *Sanchez*, hearsay statements should be excluded"; (b) because the proceeding was "a court trial," "not a jury trial," the trial court would be able to "differentiate what should be and what should not be admissible," and would "make the differentiation as the evidence [came] in." The court said it would deem the defense's *Sanchez* objection a standing objection.

At the court trial on the petition, which began in September 2019, the People presented three expert witnesses, and defendant presented one expert witness.

*Dr. Bruce Yanofsky*

Dr. Yanofsky conducted a "partial clinical interview" with defendant in May 2018, having reviewed defendant's medical records beforehand. A full clinical interview did not occur because defendant chose to end the interview early, after becoming "increasingly upset and agitated about the past and claiming innocence" of any sex crimes.

Dr. Yanofsky opined that defendant suffered from three "co-occurring" mental disorders: "unspecified paraphilic disorder"; schizophrenia; and alcohol use disorder. Paraphilia is a mental disorder "when an individual presents with urges, fantasies or behaviors that are sexual in nature that deviate from . . . what would be the standard or normal practice."

Dr. Yanofsky drew on multiple sources of information in reaching his opinion, including (a) records of defendant's institutional history (which reflected that defendant, "for the most part, consistently refused" sex-offender treatment); (b) defendant's criminal history, as reflected in records of conviction; (c) previous reports of doctors and "evaluators," which are commonly considered in mental health practice; (d) hospital staff; and (e) the May 2018 clinical interview.

Dr. Yanofsky opined that defendant was likely to engage in sexually violent predatory criminal behavior due to his paraphilic disorder, and defendant's schizophrenia aggravated that risk.

*Dr. Siobhan Donovan*

Dr. Donovan interviewed defendant in 2018, having reviewed defendant's records provided to her by the Department of State Hospitals and state prison authorities. She also interviewed defendant in 2013.

Discussing his rape conviction in the 2018 interview, defendant acknowledged that he "maybe . . . was demanding." But he insisted: "I knew I was going to get it. I went to [the victim's] house to have sex and she knew it." Defendant said his "other offenses" were "bullshit."

Dr. Donovan opined that defendant suffered from "unspecified paraphilic disorder," which was a diagnosable mental disorder that predisposed him to the commission of criminal sexual acts. She also opined that defendant suffered from schizophrenia, which condition made it harder for defendant to control his paraphilic

disorder impulses, and that nothing lead her to believe that defendant would continue to participate in sex offender treatment if he were released into the community.

Dr. Donovan drew on multiple sources of information in reaching her opinions, including (a) her interview with defendant, wherein (i) defendant told her that he participated in sex offender treatment groups because he believed doing so would facilitate a polygraph test that would exonerate him, not because he "agree[d] with the groups" or wanted the treatment, and (ii) defendant responded to her questions about his criminal history; and (b) state prison and Department of State Hospital records of defendant's institutional history.

She opined that defendant was likely to engage in sexually violent criminal behavior due to his paraphilic disorder. Defendant was in the "highest category" of risk.

*Dr. Craig King*

Dr. King interviewed defendant for three hours, after reviewing "all the records . . . meticulously," including defendant's "medical and mental history."

Defendant told Dr. King: his rape victim had sex with him willingly; "his main reason for being involved" in sex offender treatment programs at Coalinga State Hospital "was to get a polygraph test to prove his innocence"; he did not think he had any risk factors to sexually re-offend in the community; and he did not need sex offender treatment.

Dr. King concluded defendant suffered from multiple mental disorders, including "paraphiliac disorder," which predisposed defendant to commit criminal sexual acts and made him a substantial danger for committing sexually violent criminal behaviors without appropriate treatment and custody.

4

*Dr. Preston Sims*

Dr. Sims, defendant's sole expert witness, testified he interviewed defendant in March 2018, after following standard protocol of reviewing multiple sources of information.

Dr. Sims concluded that appellant's 1979 forcible rape conviction qualified as a sexually violent offense under the SVPA, and that defendant suffered from schizophrenia, antisocial personality disorder, and alcohol use disorder.

Dr. Sims concluded defendant did *not* suffer from paraphilic disorder, as defendant's multiple "sexual offense incidents were all very disparate," which did not indicate that defendant "ha[d] a particular script or that he thinks about . . . nonconsenting sex on a regular basis." Accordingly, Dr. Sims opined, defendant's disorders did "not predispose him specifically to the commission of criminal sexual acts." "[W]hat they [did] predispose him to [was] a number of antisocial behaviors, one of which could possibly be of a sexual nature," he explained.

Dr. Sims agreed with the People's experts that defendant *was* "likely to engage in sexually violent predatory criminal behavior," but disagreed that such behavior would be "due to his specific mental disorders."

The trial court and Dr. Sims had the following colloquy:

"[The trial court]: The schizophrenia . . . and the antisocial personality disorder. There's some other things thrown in, but those are the two big ones.

"[Dr. Sims]: You are correct.

"[The trial court]: And yet, in your determination, you feel those mental disorders do not predispose him to be sexually violent in the future, but you believe he will be or is likely to be sexually violent in the future. [¶] Based on what? What is it that would compel him -- apart from those disorders, to be likely sexually violent in the future, in your opinion?

5

"[Dr. Sims]:  In my opinion, it's a combination of all these things.  Well it's a combination of all these things together, and I can't point to any particular thing.

"[The trial court]:  So those two disorders play a part in it, but there's other stuff, or are they unrelated to his future conduct?

"[Dr. Sims]:  Well, I don't think they're unrelated, but I don't think their relatedness rises to the level to say 'predisposes him to.' "

*Defendant's Closing Argument*

Defense counsel conceded the People satisfied the first element of CALCRIM No. 3454 (the rape, a qualifying sexually violent offense), but emphasized that Dr. Sims said defendant did not have a mental disorder "that predispose[d] [defendant] to commit sexual acts."

Counsel argued that the four expert opinions, "based upon . . . circumstantial evidence," were "all . . . reasonable."  But "[e]ven if" circumstantial evidence "that point[ed] towards guilty" outweighed the other evidence, the trial court "[had] to accept" the evidence "that sa[id] not guilty or doesn't meet the criteria."

*Trial court's ruling*

The trial court concluded the People "proved their case beyond a reasonable doubt," and committed defendant under the SVPA.

The trial court explained:  "[T]he [c]ourt heard from four experts . . . and there was substantial agreement . . . that [defendant] does have a diagnosed mental disorder. There was a disagreement as to what the mental disorder [was].

"We did hear from three of [the experts] that [defendant] has . . . schizophrenia . . . [and] an unspecified paraphilic disorder . . . .

"They all . . . felt, with the exception of Dr. Sims, that that mental disorder made [defendant] a danger to the health and safety of others, because it is likely that he will engage in sexually violent predatory criminal behavior.

6

"The exception being Dr. Sims. . . . He did conclude that . . . [defendant] does not suffer from a paraphilic disorder. . . .

"Dr. Sims . . . believes [defendant] is likely to engage in sexually violent predatory behavior. He also . . . opined that [defendant] is a high risk for a future sexual offense, and that he is likely to commit violent sexual acts in the future.

"However, he concluded that it was not because of [defendant's] mental disorder. And under questioning by the [c]ourt, Dr. Sims couldn't really say why he would commit those offenses."

The trial court observed that, though it was "required to consider the opinions of experts," "as the trier of fact, [it] [didn't] have to . . . agree with them." "I find Dr. Sims' conclusion to be a bit of an outlier, and I'm impelled to conclude . . . that not only does [defendant] have a diagnosed mental disorder, . . . he is a danger to the health and safety of others, because I find that it is likely that he will engage in sexually violent predatory criminal behavior."

DISCUSSION

I

*The Sexually Violent Predator Act*

"The SVPA provides for involuntary civil commitment of an offender immediately upon release from prison if the offender is found to be an SVP. [Citation.] 'The SVPA was enacted to identify incarcerated individuals who suffer from mental disorders that predispose them to commit violent criminal sexual acts, and to confine and treat such individuals until it is determined they no longer present a threat to society.' [Citation.] ' "[A]n SVPA commitment proceeding is a special proceeding of a civil nature, because it is neither an action at law nor a suit in equity, but instead is a civil commitment proceeding commenced by petition independently of a pending action." ' [Citation.]

"An SVP is defined as 'a person who has been convicted of a sexually violent offense against one or more victims and who has a diagnosed mental disorder that makes the person a danger to the health and safety of others in that it is likely that he or she will engage in sexually violent criminal behavior.' (§ 6600, subd. (a)(1).) A 'diagnosed mental disorder' is defined to include 'a congenital or acquired condition affecting the emotional or volitional capacity that predisposes the person to the commission of criminal sexual acts in a degree constituting the person a menace to the health and safety of others.' (§ 6600, subd. (c).)" (*Jones v. Whisenand* (2017) 8 Cal.App.5th 543, 551.)

"At trial, the trier of fact determines whether, beyond a reasonable a doubt, the offender is an SVP. (§ 6604.) If the trier of fact determines the offender is an SVP, the offender is committed for an indefinite term to the custody of the [Department of State Hospitals] for appropriate treatment and confinement in a secure facility." (*Jones v. Whisenand, supra*, 8 Cal.App.5th at p. 553.)

CALCRIM No. 3454 provides the pattern jury instruction for initial SVP commitment:

"To prove [the allegation defendant is an SVP], the People must prove beyond a reasonable doubt that:

"1. He has been convicted of committing a sexually violent offense;

"2. He has a diagnosed mental disorder;

"AND

"3. As a result of that diagnosed mental disorder, he is a danger to the health and safety of others because it is likely that he will engage in sexually violent predatory criminal behavior;

"AND

"4. It is necessary to keep him in custody in a secure facility to ensure the health and safety of others."

Defendant argues that, in light of *Sanchez*, the "erroneous admission" of "testimony by the prosecution's experts to case-specific facts" was an abuse of discretion that violated his state and federal due process rights to a "fundamentally fair trial." Specifically, defendant contends "[a]ll three evaluators" the People presented "relied on a finding that [defendant] was sexually aroused by forcing sex on unconsenting victims, and all three of these findings were based solely upon hearsay."

The People argue "[a]t least some of the expert testimony" defendant challenges "was entirely proper," and any error was harmless.

We conclude the trial court did not abuse its discretion, as nothing in the record dispels the presumption the trial court ignored material it knew was inadmissible under *Sanchez*.

*Sanchez*

"Hearsay, defined as 'evidence of a statement that was made other than by a witness while testifying at the hearing and that is offered to prove the truth of the matter stated,' is inadmissible unless it falls under an exception. (Evid. Code, § 1200, subds. (a), (b).) A statement 'offered for some purpose other than to prove the fact stated,' however, is not hearsay. [Citation.] This latter principle has been applied to allow expert witnesses to testify about their general knowledge in a specialized area without being subject to exclusion on hearsay grounds. (*Sanchez, supra*, 63 Cal.4th at p. 676.) 'By contrast, an expert has traditionally been precluded from relating case-specific facts about which the expert has no independent knowledge. Case-specific facts are those relating to the particular events and participants alleged to have been involved in the case being tried.' [Citation.]

"An exception to the general rule barring an expert from relating case-specific hearsay developed under the common law for medical diagnoses, as doctors often rely on

9

patients' hearsay descriptions of their symptoms to form diagnoses. (*Sanchez, supra*, 63 Cal.4th at p. 678.) This exception was recognized and given more general application in Evidence Code sections 801 and 802. (*Sanchez,* at p. 678.) Evidence Code section 801 allows an expert to render an opinion '[b]ased on matter (including his special knowledge, skill, experience, training, and education) perceived by or personally known to the witness or made known to him at or before the hearing, whether or not admissible, that is of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates, unless an expert is precluded by law from using such matter as a basis for his opinion.' (Evid. Code, § 801, subd. (b).) Evidence Code section 802 states that an expert may 'state on direct examination the reasons for his opinion and the matter (including, in the case of an expert, his special knowledge, skill, experience, training, and education) upon which it is based, unless he is precluded by law from using such reasons or matter as a basis for his opinion.' " (*People v. Roa* (2017) 11 Cal.App.5th 428, 442-443 (*Roa*), fn. omitted.)

"Expert testimony that discloses hearsay evidence was . . . circumscribed by the California Supreme Court in *Sanchez*. . . . The Supreme Court held that the case-specific statements related by the expert concerning the defendant's gang membership constituted inadmissible hearsay because '[t]hey were recited by the expert, who presented them as true statements of fact, without the requisite independent proof.' [Citation.]" (*Roa, supra*, 11 Cal.App.5th at p. 447.)

"The court in *Sanchez* rejected the not-for-the-truth limitation when applied to expert basis testimony and adopted in its place the following rule: 'When any expert relates to the jury case-specific out-of-court statements, and treats the content of those statements as true and accurate to support the expert's opinion, the statements are hearsay. It cannot logically be maintained that the statements are not being admitted for their truth.' (*Sanchez, supra*, 63 Cal.4th at p. 686, fn. omitted.) The court also set forth certain guidelines for admissible and inadmissible expert basis testimony. Experts may

10

rely on background information accepted in the field of expertise, information within their personal knowledge, and nontestimonial hearsay properly admitted under a statutory hearsay exception.  (*Id*. at p. 685.)  An expert may also '*rely* on hearsay in forming an opinion, and may tell the jury in *general terms* that he did so. . . .  [¶]  What an expert cannot do is relate as true case-specific facts asserted in hearsay statements, unless they are independently proven by competent evidence or are covered by a hearsay exception.' (*Sanchez,* at pp. 685-686.)"  (*Roa, supra*, 11 Cal.App.5th at p. 448, fn. omitted.)

*Presumption that Judicial Duty is Properly Performed*

" ' "A trial judge hears many items during the course of a trial which are inadmissible, and [s]he is called upon to rule on the admissibility of numerous evidentiary matters.  The fact that [s]he has heard these things does not mean that [s]he cannot divorce them from [her] mind." [Citations.]' [Citation.]  ' "As an aspect of the presumption that judicial duty is properly performed [(Evid. Code, § 664)], we presume . . . that the court knows and applies the correct statutory and case law [citation] and is able to distinguish admissible from inadmissible evidence, relevant from irrelevant facts, and to recognize those facts which properly may be considered in the judicial decisionmaking process." [Citation.]  Stated another way, a trial court is presumed to ignore material it knows is incompetent, irrelevant, or inadmissible.' [Citation.]  'Only proof that the evidence actually figured in the court's decision will overcome these presumptions.  [Citations.]  Clearly, the mere fact that the court heard or read the evidence is not sufficient to overcome the presumptions.' "  (*Hayward v. Superior Court* (2016) 2 Cal.App.5th 10, 60-61, review granted Nov. 9, 2016, S237174.)

*Analysis*

Here, before trial, the trial court recognized that "based on *Sanchez*, hearsay statements should be excluded," but observed that because the proceeding was "a court trial," "not a jury trial," the trial court would be able to "differentiate what should be and

what should not be admissible," and would "make the differentiation as the evidence [came] in." After four experts who interviewed defendant and reviewed his medical and prison records testified (providing testimony that defendant contends included numerous inadmissible case-specific facts), the trial court determined defendant was an SVP.

In explaining its determination, the trial court did not reference any of the inadmissible case-specific facts defendant challenges on appeal, but did observe that defendant's expert's "outlier" opinion -- that defendant, though likely to engage in sexually violent predatory behavior, would *not* do so because of a diagnosed mental disorder -- was not convincing.

That the trial court may have *heard* inadmissible case-specific hearsay regarding defendant, does not overcome the presumption that the trial court applied *Sanchez* and properly ignored such material. (*Hayward v. Superior Court, supra*, 2 Cal.App.5th at pp. 60-61, review granted.)

Further, the expert opinion testimony here drew on multiple sources of information, not solely the case-specific facts that defendant challenges on appeal. (Cf. *People v. Bona* (2017) 15 Cal.App.5th 511, 522 & fn. 10 [rejecting a *Sanchez* challenge to a mentally disordered offender commitment under Penal Code section 2962, explaining that expert opinion testimony was "supported by evidence in the record" because the expert "interviewed [the defendant], reviewed his records and conferred with his treating doctors," and experts " 'may rely on hearsay documents that are "of a type that reasonably may be relied upon by an expert in forming an opinion upon the subject to which his testimony relates" ' "].)

DISPOSITION

The judgment (commitment order) is affirmed.

_____
HULL, Acting P. J.

We concur:


_____
MAURO, J.


_____
HOCH, J.

Filed 6/28/21

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Yolo)

----


| | |
|---|---|
| THE PEOPLE, | C090439 |
| Plaintiff and Respondent, | (Super. Ct. No. CRF073704) |
| v. | ORDER CERTIFYING OPINION FOR PUBLICATION |
| GABRIEL VONZEL PRESLEY, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Yolo County, David Rosenberg, Judge. Affirmed.

Deborah L. Hawkins, under appointment by the Court of Appeal, for Defendant and Appellant.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Julie A. Hokans, Supervising Deputy Attorney General, Robert Gezi, Deputy Attorney General, for Plaintiff and Respondent.

14

THE COURT:

The opinion in the above-entitled matter filed on June 16, 2021, was not certified for publication in the Official Reports. For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

BY THE COURT:

_____,
HULL, Acting P. J.

_____,
MAURO, J.

_____,
HOCH, J.

15